835 P.2d 819

**SANTA FE EXPLORATION COMPANY, Petitioner–Appellant,**

v.

**OIL CONSERVATION COMMISSION OF the STATE OF NEW MEXICO, Respondent–Appellee,**

and

**STEVENS OPERATING COR-PORATION, Petitioner–Cross–Appellant,**

v.

**OIL CONSERVATION COMMISSION OF the STATE OF NEW MEXICO, Respondent–Cross–Appellee.**

No. 19707.

Supreme Court of New Mexico.

July 27, 1992.

---

Padilla & Snyder, Ernest L. Padilla, Santa Fe, Brown, Maroney & Oaks Hartline, K. Douglas Perrin, Dallas, Tex., for appellant.

Robert G. Stovall, Santa Fe, for Oil Conservation Com'n.

Campbell, Carr, Berge & Sheridan, William F. Carr, Santa Fe, for Stevens Operating Corp.

## OPINION

BACA, Justice.

This appeal involves a series of orders issued by the New Mexico Oil Conservation Commission (the "Commission") and the New Mexico Oil Conservation Division (the "Division"). These orders established and govern the production of oil from the North King Camp Devonian Pool (the "Pool") in which appellant, Santa Fe Exploration Company ("Santa Fe"), and cross-appellant, Stevens Operating Corporation ("Stevens"), owned interests. After the Division approved Stevens's request to drill a

well at an unorthodox location and limited production from the well, both Santa Fe and Stevens petitioned the Commission for a de novo review. After consolidation of the petitions, the Commission, in its final order, approved the Stevens well, placed restrictions on Stevens's production from this well, and limited oil production from the entire Pool. Pursuant to NMSA 1978, Section 70-2-25 (Repl.Pamp.1987), both Santa Fe and Stevens appealed the final order of the Commission to the district court, which affirmed. Both parties appeal the decision of the district court. We note jurisdiction under Section 70-2-25 and affirm.

### I

In December 1988, at the request of Santa Fe, the Division issued Order No. R-8806, which established the Pool and the rules and regulations governing operation of the Pool. These rules established standard well spacings and a standard unit size of 160 acres; regulated the distances that wells could be placed from other wells, the Pool boundary, other standard units, and quarter-section lines; set production limits for wells in the Pool; and outlined procedures for obtaining exceptions to the rules. The order also approved Santa Fe's Holstrom Federal Well No. 1 (the "Holstrom well") for production, which Santa Fe began producing at the rate of 200 barrels per day.

In April 1989, Curry and Thornton ("Curry"), predecessors in interest to Stevens, applied to the Division to drill a well in the Pool and for an exception to the standard spacing and well location rules. Curry requested the non-standard spacing because it claimed that geologic conditions would not allow for production of oil from their lease from an orthodox well location. Santa Fe[1] opposed the application, claiming that the well would impair its correlative rights to oil in the Pool. In its Order No. R-8917, the Division approved Curry's application to drill the well at the unorthodox location but imposed a production penalty limiting the amount of oil that Curry could produce from the well to protect correlative rights of other lease holders in the Pool.

In May, Stevens, which had replaced Curry as an operator in the Pool, applied to the Division for an amendment to Order No. R-8917. Stevens requested that, instead of drilling the well authorized by Order No. R-8917, it be allowed to enter an existing abandoned well and drill directionally to a different location. The requested well, if approved and drilled, would also be at an unorthodox location. Santa Fe opposed the amendment and objected to the original production penalty, which it contended should have allowed less production from the Stevens well. The Division approved Stevens's application and issued Order No. R-8917-A amending Order No. R-8917. The amended order, while allowing directional drilling to an unorthodox location, required Stevens to otherwise meet the requirements of the original order, including the original production penalty.

Stevens proceeded to drill the well authorized by the amended order. When the well failed to produce oil, Stevens contacted the Division Director and requested approval to re-drill the well to a different location and depth. The Director permitted Stevens to continue drilling at its own risk and subject to subsequent orders to be entered after notice to all affected parties and a hearing. Stevens drilled and completed this well (the "Deemar well") and filed an application for a de novo hearing by the Commission to approve production from the well and to consider the production penalty. See NMSA 1978, § 70-2-13 (Repl.Pamp.1987) (decisions by the Director may be heard de novo by the Commission). Santa Fe also filed an application for a de novo hearing opposing Stevens's application or, in the alternative, urging that a production penalty be assessed against the Stevens well.

The Commission consolidated the petitions and, after notice to the parties and a

---

**1.** Santa Fe and Exxon USA were co-owners of both the lease and the production from the Holstrom well. While both Santa Fe and Exxon USA contested the application, for the sake of simplicity we will refer to them collectively as "Santa Fe."

hearing, entered Order No. R–9035. This order estimated the total amount of oil in the Pool and the amount of oil under each of the three tracts in the Pool.[2] The order set the total allowable production from the Pool at the existing production rate of 235 barrels per day,[3] and allocated production to the two wells in accordance with the relative percentages of oil underlying each of the three tracts. Under this formula, Stevens was allowed to produce 49 barrels per day from its Deemar well, Santa Fe was allowed to produce 125 barrels per day from its Holstrom well, and the undeveloped tract left in the Pool would be allowed to produce 61 barrels per day, if developed. The order also allowed the production to be increased to 1030 barrels per day if all operators voluntarily agreed to unitized operation of the Pool.

Pursuant to NMSA 1978, Section 70–2–25(A), both Santa Fe and Stevens applied to the Commission for a rehearing. Santa Fe contended that the second attempt at directional drilling was unlawful; that it was denied due process and equal protection by the ex parte contact between Stevens and the Division Director; that the findings of the Commission apportioning production were not supported by the evidence; that the reduction of production was not supported by the evidence and was erroneous, capricious, and contrary to law; and that the unitization was illegal and confiscatory to Santa Fe. Stevens argued that the order was contrary to law because it would result in the drilling of an unnecessary well on the undeveloped tract, which would result in waste; that the order was arbitrary, capricious, unreasonable, and contrary to law because it exceeded the Commission's statutory authority; that the order violated its due process rights; and that the findings regarding recoverable reserves were contrary to the evidence and arbitrary and

capricious. When the Commission took no action on the applications for rehearing, the petition was presumed to be denied and each party appealed to the district court, which consolidated the appeals. *See* NMSA 1978, § 70–2–25.

On appeal to the district court, Santa Fe contended that Order No. R–9035 was arbitrary and capricious, that it was not supported by substantial evidence, that the Commission exceeded its statutory authority, and that the Commission Chairman's bias against Santa Fe denied it due process. Stevens contended that the order was arbitrary, capricious, and unreasonable; that it was contrary to law; and that it denied Stevens's rights to due process. The trial court, after a review of the evidence presented at the Commission's hearings, affirmed the Commission's order. The trial court also dismissed, with prejudice, Santa Fe's contention of bias.

Pursuant to Section 70–2–25, both Santa Fe and Stevens appeal the district court decision to this Court. Santa Fe contends (1) that it was denied procedural due process because the Commission was biased; (2) that the district court erred when it failed to consider the question of bias; (3) that the Division violated its own regulations and procedures; (4) that the Commission abused its discretion when it lowered allowable production from the Pool; and (5) that the Commission decision was not supported by the evidence and was arbitrary and capricious. Stevens contends (1) that the Commission exceeded its authority when it reduced allowable production in an attempt to unitize operation of the Pool; (2) that the order violated the Commission's statutory duty to prevent waste; (3) that the order was not supported by substantial evidence; and (4) that its rights to due process were violated. Because of a substantial overlap of issues

**2.** The order estimated oil productive rock volume in the Pool to be 10,714 acre-feet and allocated the oil as follows: 21% to the tract on which Stevens held the lease and where the unorthodox well was located (E/2 W/2 of section 9); 53% to the tract on which Santa Fe held the lease and where the Holstrom well was located (SE/4 of section 9); 26% to the tract on

which Santa Fe held the lease and where no producing well was located (NE/4 of section 9).

**3.** At the time, Santa Fe was producing 200 barrels per day of oil from its Holstrom well. Under the production penalty formula imposed by the prior Division order, Stevens would have been allowed to produce 35 barrels per day from its Deemars well.

raised by Santa Fe and Stevens, we consolidate these issues and address the following: (1) whether the Commission's actions violated due process rights of either Santa Fe or Stevens; (2) whether by issuing Order No. R–9035 the Commission exceeded its statutory authority or violated any of its own rules; (3) whether the Commission's order was supported by substantial evidence; and (4) whether the Commission's order was arbitrary and capricious.

## II

■ Before addressing the substance of this appeal, we first must address an issue of appellate procedure. Santa Fe contends that the Commission, in its answer brief, has disregarded SCRA 1986, 12–213 (Cum. Supp.1991), by failing to provide proper citation to the record proper, transcript of proceedings, and exhibits on which it relied. In light of this failure, Santa Fe urges us to disregard the Commission's arguments or, in the alternative, to accord the Commission's arguments less weight.

We agree with Santa Fe that the Commission failed to provide proper citations in its answer brief. Rule 12–213(B) requires an answer brief to meet the same requirements as the brief in chief, which include "citations to authorities and parts of the record proper, transcript of proceedings or exhibits relied on." Rule 12–213(A)(3). The Commission's answer brief contains numerous factual statements without a single citation to the record below, except for a passing reference to several findings made by the Commission (but without citation to where such findings appear in the Record Proper) and one citation to the record in which the Commission's brief quoted Santa Fe's brief in chief and citation. The Court of Appeals, in addressing a similar violation, stated:

> [W]e caution [appellant's] counsel regarding violations of our appellate rules. [Appellant] provided no citations to the parts of the record and transcript he relied on, a violation of SCRA 1986, 12–213(A)(1)(c) and (A)(2). Technically, we have no duty to entertain any of [appellant's] contentions on appeal due to this

procedural violation. *See Bilbao v. Bilbao*, 102 N.M. 406, 696 P.2d 494 (Ct.App. 1985). [Appellant's] counsel also failed to provide case authority for several of his issues, a violation of Rule 12–213(A)(3). We remind counsel that we are not required to do his research. *In re Adoption of Doe* [, 100 N.M. 764, 676 P.2d 1329 (1984) ]. We will not review issues raised in appellate briefs and unsupported by cited authority. *Id.*

*Fenner v. Fenner*, 106 N.M. 36, 41–42, 738 P.2d 908, 913–14 (Ct.App.), *cert. denied*, 106 N.M. 7, 738 P.2d 125 (1987). As the Court of Appeals advised appellant's counsel in *Fenner*, we advise counsel for the Commission "to read and follow the appellate rules to avoid future violations." *Id.* 106 N.M. at 42, 738 P.2d at 914.

## III

We turn now to the due process claims of Santa Fe and Stevens. Santa Fe claims that it was denied procedural due process for three separate reasons: (1) the Commission was biased by the ex parte communication between the Division Director and Stevens thereby tainting its decision; (2) the Division Director's approval of the second directional drilling attempt was given prior to notice and a hearing; and (3) the Commission failed to give notice that it was going to consider limiting allowable production from the Pool. Stevens, while contesting Santa Fe's charge of bias, contends that its procedural due process rights were violated because the Commission failed to give adequate notice of its intent to limit production from the entire field. Stevens also claims that its substantive due process rights were violated by the Commission's allegedly erroneous determination of the recoverable reserves underlying the Pool. We address each contention below.

### A

■ Santa Fe argues that its procedural due process rights were denied because the Division Director had ex parte contact with Stevens prior to Stevens's second directional drilling attempt, conditionally approved the drilling, and then participated in the

affirmance of this decision as a member of the Commission. This action, Santa Fe contends, gives the appearance of impropriety and irrevocably taints the Commission's decision, and, as such, renders the decision voidable. *See, e.g., Professional Air Traffic Controllers Org. v. Federal Labor Relations Auth.*, 685 F.2d 547, 564 (D.C.Cir.1982). Santa Fe also contends that the district court erred when it dismissed its claim of bias with prejudice. Santa Fe argues that the court should have allowed its discovery motion on the issue of bias rather than dismissing with prejudice. These actions, Santa Fe concludes, violated its rights to procedural due process.

■ At a minimum, procedural due process requires that before being deprived of life, liberty, or property, a person or entity be given notice of the possible deprivation and an opportunity to defend. *Reid v. New Mexico Bd. of Examiners in Optometry*, 92 N.M. 414, 415–16, 589 P.2d 198, 199–200 (1979). In addition, the trier of fact must be unbiased and may not have a predisposition regarding the outcome of the case. *Id.* at 416, 589 P.2d at 200. Our cases also require the appearance of fairness to be present. *Id.*

> The inquiry is not whether the Board members are actually biased or prejudiced, but whether, in the natural course of events, there is an indication of a possible temptation to an average man sitting as a judge to try the case with bias for or against any issue presented to him.

*Id.* The above principles are applicable to administrative proceedings, such as the instant case, where the administrative agency adjudicates or makes binding rules that affect the legal rights of individuals or entities. *Id.* Due process safeguards are particularly important in administrative agency proceedings because "many of the customary safeguards affiliated with court proceedings have, in the interest of expedition and a supposed administrative efficiency, been relaxed." *Id.*

In *Reid*, the Board of Examiners in Optometry initiated disciplinary proceedings against Dr. Reid for alleged misconduct.

Prior to the hearing and pursuant to a statute, Reid disqualified two of the five Board members. At the hearing, Reid moved to disqualify one of the remaining Board members, Dr. Zimmerman, on the basis of bias. Reid based his motion on Zimmerman's prior statements that Reid would lose his license after the hearing. After Zimmerman testified that he could render a fair and impartial decision, the Board denied Reid's request to disqualify Zimmerman. The Board revoked Reid's license to practice and he appealed to the district court, which affirmed. *Id.* at 415, 589 P.2d at 199. On appeal to this Court, Reid claimed that Zimmerman's testimony indicated prejudgment and that the failure to disqualify Zimmerman deprived him of his right to due process. We agreed and held that the Board's failure to disqualify Zimmerman violated Reid's due process rights because Zimmerman's prior statements indicated bias against Reid. *Id.* at 416, 589 P.2d at 200.

The instant case is distinguishable from the *Reid* case. Unlike the appellant in *Reid*, Santa Fe failed to raise the issue of the Division Director's bias at the Commission hearing, even though it was aware of the prior ex parte contact. Unlike the Board member in *Reid*, the Director in the instant case did not express an opinion regarding the outcome of the case prior to the hearing. The Director merely permitted Stevens to drill a second exploratory well at its own risk and conditioned approval of production from the well on further Commission action. He made no comment on the probability of Commission approval or on the possible production penalties that could be assessed. Additionally, at the original hearing, the Director could have approved Stevens's request to drill the well to a different depth. Moreover, by statute, the Director is a member of the Commission, NMSA 1978, Section 70–2–4 (Repl. Pamp.1987), and has a duty to prevent waste, NMSA 1978, Sections 70–2–2, –3 (Repl.Pamp.1987) (defining and prohibiting waste); NMSA 1978, Section 70–2–11 (Repl.Pamp.1987) (setting out duties). Here, the Director avoided waste by allowing the second well to be drilled, which

eliminated the expense of removing the drilling rig from the drilling site and moving the rig back after approval was obtained. As *Reid* is distinguishable, we hold that the Commission did not violate Santa Fe's procedural due process rights by virtue of bias.

■ In addition, Santa Fe was not denied due process when the district court dismissed its claim of bias with prejudice. The court allowed briefing on the question of whether to vacate the claim of bias and whether dismissal of the bias claim should be with or without prejudice. More is not required. *See Lowery v. Atterbury,* 113 N.M. 71, 73, 823 P.2d 313, 315 (1992). *See also, Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 325 (10th Cir.1984) (procedural due process not violated where petitioner given opportunity to address issue by memorandum).

### B

We next address other claims by the parties that their respective rights to procedural due process were denied. Santa Fe contends that the Commission's actions impaired its constitutionally protected property rights with neither adequate notice nor an opportunity to be heard regarding two separate issues: (1) whether the Commission should grant permission for Stevens's second directional drilling attempt; and (2) whether the Commission should reduce the Pool wide allowable production. Stevens also contends that it was denied procedural due process when the Commission failed to provide notice prior to the hearing that Pool wide allowables might be reduced as a consequence of the hearing.

### 1

■ Santa Fe's first argument is that, by allowing Stevens to drill the second well without notice or a prior hearing, the Commission denied Santa Fe due process. Before due process is implicated, the party claiming a violation must show a deprivation of life, liberty, or property. *Reid,* 92 N.M. at 415–16, 589 P.2d at 199–200. In the instant case, the property right implicated is Santa Fe's right to produce the oil

underlying its tract in the Pool. This right was not implicated by virtue of Stevens drilling a well, but rather would be implicated by Stevens being allowed to produce oil from the well. Santa Fe had notice and an opportunity to be heard before the Commission granted Stevens permission to produce oil from the Deemar well. Because no due process right was implicated, we find no violation of due process.

### 2

■ Citing *Jones* and *McCoy v. New Mexico Real Estate Comm'n,* 94 N.M. 602, 614 P.2d 14 (1980), both Santa Fe and Stevens claim that the Commission deprived them of procedural due process. They argue that the Commission failed to give adequate notice that it would consider limiting production from the Pool. Both claim that the only issues before the Commission were whether the Deemar well should be approved and what production penalty should be imposed. Because the Commission went beyond these issues and decided an issue of which the parties neither had notice nor an opportunity to be heard, both parties conclude that the Commission violated their due process rights.

Curiously, none of the parties cited *National Council on Compensation Insurance v. New Mexico State Corporation Commission,* 107 N.M. 278, 756 P.2d 558 (1988), which we find controlling. In *National Council,* the National Council on Compensation Insurance ("NCCI") filed a premium rate increase for all worker's compensation carriers operating in New Mexico with the State Insurance Board. Prior to a hearing considering the rate increase, the Insurance Board, by letter and a subsequent mailed notice, informed NCCI that a hearing had been scheduled to allow public written and oral comments regarding the proposed rate increases and to allow NCCI to present its filing. The notice provided that the hearing would consider whether the proposed rate increase was excessive, inadequate, or unfairly discriminatory. After the hearing, the Insurance Board denied NCCI's rate increase request, and NCCI appealed. *Id.* at 280–82, 756

P.2d at 560–62. On appeal, NCCI contended that its procedural due process rights were denied because the notice provided was not sufficiently specific to allow NCCI to prepare for issues to be addressed at the hearing. *Id.* at 283, 756 P.2d at 563. We disagreed and held that the notice provided comported with due process requirements because "[t]he notice provided NCCI an opportunity to be heard by reasonably informing NCCI of the matters to be addressed at the hearing so that it was able to meet the issues involved." *Id.* at 284, 756 P.2d at 564. In other words, general notice of issues to be presented at the hearing was sufficient to comport with due process requirements.

Like the notice given to NCCI in *National Council*, both Santa Fe and Stevens were reasonably informed as to the issues that the Commission would address at its hearing on the consolidated petitions. The parties themselves had each requested a de novo review by the Commission of Stevens's application for a non-standard well location. Santa Fe requested that the Commission deny the application or, in the alternative, impose a production penalty to protect its correlative rights. Stevens requested approval of its Deemar well for production and asked the Commission to reconsider the production penalty. At the hearing, the parties presented the evidence and requested that the Commission provide them the relief that each sought: the right to produce its proportionate share of the oil from the Pool. The parties knew, prior to the hearing, that the Commission would be considering production rates from the various wells and the correlative rights of all parties concerned.

The cases relied upon by the parties are either distinguishable or support the result we reach today. In *McCoy*, we considered whether a realtor's right to procedural due process was violated when her license was revoked by the Real Estate Commission. In that case, the district court based its decision on an issue raised by the Real Estate Commission for the first time on appeal. Because the realtor was denied notice and any opportunity to prepare her case and be heard on that issue in the district court, we held that the district court's decision violated due process. *McCoy*, 94 N.M. at 603–04, 614 P.2d at 15–16. In *Jones*, the appellant claimed that he was denied due process when the trial court did not allow him to present testimony at a hearing to determine whether a settlement agreement should be approved. The Tenth Circuit disagreed, and, held that, because the appellant was given notice and had the opportunity to be heard by submitting a lengthy memorandum, he was not denied due process. *Jones*, 741 F.2d at 325.

Unlike the appellant in *McCoy*, the parties in the instant case had adequate notice of the issues that were going to be addressed to allow them to prepare their cases. In fact, the evidence presented by the parties at the Commission's hearing shows that they had notice of the very issues that the Commission eventually considered: allocation of production from the Pool, protection of the correlative rights of Pool members, and prevention of waste in the Pool. The parties presented evidence of the size, shape, location, and structure of the reservoir. The parties presented evidence that the Stevens well was located so that it could effectively drain the entire reservoir and destroy correlative rights of the other parties unless a production penalty was assessed. The parties presented evidence of the efficient production rate of the Santa Fe well. Expert testimony presented at the hearing demonstrated that the oil in the Pool could be produced more efficiently under unitized operation. While the Commission crafted a unique solution to the problem presented to it, the *process* by which the Commission reached this solution was not unique. The parties had general notice of the issues to be determined, and evidence was presented at a hearing before the Commission made its final decision. Under these circumstances, we hold that Stevens and Santa Fe had adequate notice so as to be reasonably informed of the issues to be decided by the Commission. Thus, we find no violation of procedural due process here.

## C

■ The final due process argument that we discuss is whether Stevens's substantive due process rights were violated by the Commission's determination of the recoverable reserves underlying the Pool. Stevens argues that the setting of low allowable production from the well was an arbitrary decision that will deprive it of a valuable property right. Stevens, citing *Schware v. Board of Bar Examiners*, 60 N.M. 304, 291 P.2d 607 (1955), *rev'd*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), claims that this is a violation of substantive due process. We disagree. As discussed in Section VI, *infra*, the Commission did not act in an arbitrary or capricious manner. Moreover, as demonstrated in Section IV, *infra*, the Commission's actions were consistent with its statutory duties to prevent waste and protect the correlative rights of other producers in the Pool.

## IV

The next issue that we address is whether the Commission exceeded its statutory authority or violated its rules when it issued Order No. R–9035. Both Santa Fe and Stevens contend that Order No. R–9035, while not requiring unitization, effectively unitizes operation of the Pool. They argue that the Commission does not have the statutory authority to require unitization of the Pool because, under the Statutory Unitization Act, NMSA 1978, Sections 70–7–1 to –21 (Repl.Pamp.1987), unitization is available only in fields that are in the secondary or tertiary recovery phase. They assert that, because the Commission order effectively unitizes the Pool, a field in the primary development phase, the Commission exceeded its statutory authority. In addition, Santa Fe contends that the Commission violated its own rules when it allowed Stevens's second directional drilling attempt and that Order No. 9035 is void. The Commission argues that its actions were proper under the Oil and Gas Act, NMSA 1978, Sections 70–2–1 to –38 (Repl.Pamp.1987 & Cum.Supp.1991), and argues that the Statutory Unitization Act is inapplicable to the instant case.

## A

■ "The Oil Conservation Commission is a creature of statute, expressly defined, limited and empowered by the laws creating it." *Continental Oil Co. v. Oil Conservation Comm'n*, 70 N.M. 310, 318, 373 P.2d 809, 814 (1962). The Oil and Gas Act gives the Commission and the Division the two major duties: the prevention of waste and the protection of correlative rights. NMSA 1978, § 70–2–11(A); *Continental Oil Co.*, 70 N.M. at 323, 373 P.2d at 817. Correlative rights are defined as

> the opportunity afforded * * * to the owner of each property in a pool to produce without waste his just and equitable share of the oil * * * in the pool, being an amount, so far as can be practicably determined and so far as can be practicably obtained without waste, substantially in the proportion that the quantity of recoverable oil * * * under the property bears to the total recoverable oil * * * in the pool and, for such purpose, to use his just and equitable share of the reservoir energy.

NMSA 1978, § 70–2–33(H). In addition to its ordinary meaning, waste is defined to include "the locating, spacing, drilling, equipping, operating or producing, of any well or wells in a manner to reduce or tend to reduce the total quantity of crude petroleum oil * * * ultimately recovered from any pool." NMSA 1978, § 70–2–3(A).

The broad grant of power given to the Commission to protect correlative rights and prevent waste allows the Commission "to require wells to be drilled, operated and produced in such manner as to prevent injury to neighboring leases or properties." NMSA 1978, § 70–2–12(B)(7). In addition, the Division and the Commission are "empowered to make and enforce rules, regulations and orders, and to do whatever may be reasonably necessary to carry out the purpose of this act, whether or not indicated or specified in any section hereof." NMSA 1978, § 70–2–11.

In the instant case, evidence presented to the Commission indicated that the Pool was located under three separate tracts of land.

The Commission was called upon to determine the total amount of oil in the Pool and the proportionate share underlying each tract. Stevens's Deemar well was located so that it could produce oil from the top portion of the Pool, thereby avoiding waste that would have occurred unless the well was allowed. However, the well was located so that it could effectively drain the entire Pool. The Commission, charged with the protection of correlative rights of the other lease owners in the Pool, placed a production penalty on the well to protect these rights. Thus, the Commission attempted to avoid waste while protecting correlative rights. We hold that, under the facts of this case, the Commission did not exceed the broad statutory authority granted by the Oil and Gas Act.

■ Moreover, we are unpersuaded by the argument of both Stevens and Santa Fe that the Statutory Unitization Act prohibits the Commission's actions. They argue that, by enacting the Statutory Unitization Act, the legislature intended to limit the availability of forced unitization to secondary and tertiary recovery only. Both Santa Fe and Stevens quote the following language from the Statutory Unitization Act to support their argument:

It is the intention of the legislature that the Statutory Unitization Act apply to any type of operation that will substantially increase the recovery of oil above the amount that would be recovered by *primary recovery alone* and not to what the industry understands as exploratory units.

Section 70–7–1 (emphasis added by Stevens and Santa Fe). They assert that this section precludes unitization of a field in primary production such as the Pool. We disagree.

We read the above quoted language from Section 70–7–1 merely to say that the Statutory Unitization Act is not applicable to fields in their primary production phase, such as the Pool in the instant case. Noth-

ing contained in the Statutory Unitization Act, including the above quoted section, however, limits the authority of the Commission to regulate oil production from a pool under the Oil and Gas Act. The Commission still must protect correlative rights of lease holders in the Pool while preventing waste. The Commission still has broad authority "to do whatever may be reasonably necessary to carry out the purpose of this act, whether or not indicated or specified in any section hereof." NMSA 1978, § 70–2–11(A). As discussed above, in the instant case the Commission's actions were within its statutory authority. We hold that the circumstances of this case do not implicate the Statutory Unitization Act and that the Commission's actions in effectively unitizing operation of the Pool were an appropriate exercise of its statutory authority under the Oil and Gas Act.

### B

■ Santa Fe contends that, by issuing Order No. R–9035, the Commission abused its discretion by failing to follow the rules and regulations established by Order No. R–8806. That order established the Pool and set out special rules and regulations designed to prevent waste and protect correlative rights.[4] The order also established notice and hearing requirements before the Commission could allow a non-standard well to be drilled in the Pool. Santa Fe contends that, by allowing Stevens to drill a well at a non-standard location, *i.e.*, to within 70 feet of Santa Fe's lease line, without prior notice and a hearing, the Commission violated its own rules. Santa Fe also contends that lowering the allowable production from the Holstrom well to 125 barrels of oil per day without adequate notice is a violation of these rules. Santa Fe concludes that, because Order No. 9035 was issued in a manner inconsistent with these rules, the order is void and Order Nos. 8917 and 8917–A should be reinstated. We disagree.

---

4. These rules provided that the standard size for proration unit was to be 160 acres, that a well could not be located closer than 660 feet from the outer boundary of a proration unit nor nearer than 1320 feet from the nearest well in the Pool, and that the maximum production allowed from a standard production unit would be 515 barrels per day.

The Commission's actions in this case did not violate the Commission's rules established by Order No. 8806. While the Director did allow Stevens to make a second attempt to drill a well at an unorthodox location without notice to other lease holders in the Pool, the other lease holders had notice of the subsequent hearing to determine whether this well would be allowed to produce oil. In addition, this action was designed to further the Director's statutory duty to prevent waste by preventing added expense in the development of the field. Moreover, the Director could have approved drilling the second Stevens attempt at the hearing that it held prior to issuing Order No. 8917–A. Thus, the Commission's actions did not violate the rules established by Order No. 8806 and the Commission did not abuse its discretion in this matter.

## V

The next issue that we address is whether the Commission's Order No. R–9035 is supported by substantial evidence. Stevens argues that the Commission, in determining correlative rights of Santa Fe, did not refer to the recoverable oil underlying the tract. Stevens claims that this resulted in the Commission apportioning more oil in the Pool to Santa Fe than Santa Fe deserves based on evidence introduced at the hearing. Santa Fe contends that the Commission ignored testimony of its expert witnesses that indicated that a greater portion of the Pool was under its tract. Santa Fe concludes that the Commission underestimated its proportionate share of oil in the Pool and that this estimate is not supported by substantial evidence.

Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support a conclusion. *Rutter & Wilbanks Corp. v. Oil Conservation Comm'n*, 87 N.M. 286, 290, 532 P.2d 582, 586 (1975). In determining whether there is substantial evidence to support an administrative agency decision, we review the whole record. *Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.*, 101 N.M. 291, 294, 681 P.2d 717, 720 (1984).

In such a review, we view the evidence in a light most favorable to upholding the agency determination, but do not completely disregard conflicting evidence. *National Council*, 107 N.M. at 282, 756 P.2d at 562. The agency decision will be upheld if we are satisfied that evidence in the record demonstrates the reasonableness of the decision. *Id.*

Stevens contends that the Commission did not consider the recoverable reserves underlying the Santa Fe tract, *see* NMSA 1978, Section 70–2–33(H) (correlative right based on recoverable reserves), thereby overestimating the amount of oil under the Santa Fe tract. Stevens also contends that the Commission ignored testimony by Stevens's expert witnesses indicating that more of the Pool was under Stevens's tract than the Commission ultimately concluded. Stevens concludes that the record lacks substantial evidence to uphold the Commission's estimate of Santa Fe's proportionate share of oil in the Pool. Santa Fe contends that the Commission underestimated its proportional share of oil because the Commission failed to accept as conclusive the engineering and geologic evidence presented by Santa Fe of the location and extent of the Pool, which would result in a higher proportion of the oil being allocated to Santa Fe. Santa Fe concludes that the Commission's estimate of Santa Fe's proportionate share of oil in the Pool is not supported by substantial evidence.

In any contested administrative appeal, conflicting evidence will be produced. In the instant case, the resolution and interpretation of such evidence presented requires expertise, technical competence, and specialized knowledge of engineering and geology as possessed by Commission members. *See* NMSA 1978, § 70–2–4 (commissioners to have "expertise in regulation of petroleum production by virtue of education or training"); NMSA 1978 § 70–2–5 (director is "state petroleum engineer" who is "registered by the state board of registration for professional engineers and land surveyors as a petroleum engineer" or "by virtue of education and experience [has] expertise in the field of petroleum engi-

neering"). Where a state agency possesses and exercises such knowledge and expertise, we defer to their judgment. *Stokes v. Morgan,* 101 N.M. 195, 202, 680 P.2d 335, 342 (1984); *Groendyke Transp., Inc. v. New Mexico State Corp. Comm'n,* 101 N.M. 470, 477, 684 P.2d 1135, 1142 (1984). We have reviewed the record and, in light of the standard of review detailed above, find that the decision of the Commission was reasonable and is supported by substantial evidence.

## VI

■ The final issue raised by this appeal is whether the decision of the Commission is arbitrary and capricious.

Arbitrary and capricious action by an administrative agency consists of a ruling or conduct which, when viewed in light of the whole record, is unreasonable or does not have a rational basis, and " 'is the result of an unconsidered, wilful and irrational choice of conduct and not the result of the 'winnowing and sifting' process.' " *Garcia v. New Mexico Human Servs. Dep't,* 94 N.M. 178, 179, 608 P.2d 154, 155 (Ct.App.1979) (quoting *Olson v. Rothwell,* 28 Wis.2d 233, 239, 137 N.W.2d 86, 89 (1965))[, *rev'd,* 94 N.M. 175, 608 P.2d 151 (1980) ]. An abuse of discretion is established if the agency or lower court has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence. *Le Strange v. City of Berkeley,* 26 Cal.Rptr. 550, 210 Cal.App.2d 313 (1962). An abuse of discretion will also be found when the decision is contrary to logic and reason. *Newsome v. Farer,* 103 N.M. 415, 708 P.2d 327 (1985); *Sowders v. MFG Drilling Co.,* 103 N.M. 267, 705 P.2d 172 (Ct.App.1985). *Perkins v. Department of Human Servs.,* 106 N.M. 651, 655, 748 P.2d 24, 28 (Ct.App. 1987).

In the instant case, the action of the Commission is not arbitrary and capricious. As discussed in Section IV, *supra,* the Commission did not exceed its statutory authority nor violate its rules when it is-

sued the final order in this case. As discussed in Section III, *supra,* the Commission did not deprive either Santa Fe or Stevens of their due process rights. As demonstrated in Section V, *supra,* the findings of the Commission were supported by substantial evidence. The Commission considered the evidence presented by the parties, and, in light of its statutory duties to protect correlative rights and avoid waste, fashioned a creative solution to resolve this dispute. While the Commission's solution was unique, such a result is not arbitrary or capricious "if exercised honestly and upon due consideration, even though another conclusion might have been reached." *Perkins,* 106 N.M. at 655–56, 748 P.2d at 28–29 (citing *Maricopa County v. Gottsponer,* 150 Ariz. 367, 723 P.2d 716 (App. 1986)). In accordance with the foregoing discussion, we hold that Order No. R–9035 is not arbitrary and capricious.

The judgment of the trial court is AFFIRMED.

IT IS SO ORDERED.

RANSOM, C.J., and HARRIS, District Judge, concur.