This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**GEORGE M. MYLES,**

    Respondent-Appellant,

v.                                     **NO. 30,529**

**STATE OF NEW MEXICO, ex rel.**
**HUMAN SERVICES DEPARTMENT,**
**and REBECCA M. GALAZ,**

    Petitioners-Appellees.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Anna L. Juarez
Las Cruces, NM

for Appellant

Gary K. King, Attorney General
Santa Fe, NM
Torri Jacobus, Special Assistant Attorney General
Albuquerque, NM
M. Elizabeth Price, Special Assistant Attorney General
Las Cruces, NM

for Appellees

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

Appellant George Myles (Myles) contends that the district court erred in denying his Rule 1-060 NMRA motion and in concluding that it lacked jurisdiction to decide whether his driver's license should be reinstated. We affirm.

**BACKGROUND**

This case began almost seventeen years ago when, on September 6, 1994, the State of New Mexico Human Services Department, Child Support Enforcement Division (the Department) filed a petition against Myles to establish paternity as to Myles' child Marquisha and to establish Myles' child support obligations. In a pro se response, Myles admitted that he was the biological father of Marquisha. At a hearing on the Department's petition in November 1994, Myles also admitted that he had another child with Marquisha's mother, a boy named Ryan. In light of this admission, the Department inquired whether Myles wished to include Ryan in the proceedings, and Myles responded affirmatively. At the close of the hearing, Myles was informed that he was being adjudicated the parent of both Marquisha and Ryan, that child support would be determined based on both children, and he was fully informed what his child support obligations would be. An order memorializing these decisions was entered on December 2, 1994.

Nine years later, in December 2003, the Department filed a motion for order to

show cause that alleged that Myles had failed to comply with the terms of the December 1994 order. Myles was ordered to appear before a hearing officer, but he failed to do so. On March 12, 2004, the hearing officer entered a report and decision and certification for contempt with the district court. The order asked the court to find Myles in contempt for refusing to comply with the December 1994 child support order and indicated that Myles owed approximately $8,400 in child support and unpaid judgment interest.

Myles filed timely pro se objections and claimed that his nonappearance at court was the result of his attorney's failure to alert him to the existence of the hearing. As to child support, Myles stated that his financial situation had recently changed and further stated that he had recently come to believe that Ryan was not his biological child.

Finally, he pointed out that his license had been revoked due to his failure to pay child support, and he asserted that this was a significant impediment to his ability to secure employment. We observe that there is no mention of the license revocation in the March 12, 2004 order. Further, we observe that there is no order revoking Myles' driver's license included with the record in this case.

The district court, having received and considered the hearing officer's report and decision and Myles' objections, remanded the matter to the hearing officer with

instructions to treat Myles' objections as a motion for reconsideration. When Myles appeared before the hearing officer on remand, he withdrew his objections. As such, the officer filed an order on June 25, 2004, affirming the March 12, 2004 order and again certified the matter to the district court for a finding of contempt.

Myles again filed timely pro se objections in which he expressed general concerns about the fairness of the "system," complained that he was being lied to by his attorney and others, insisted that he be allowed to test whether Ryan is actually his son, and again asserted that he needed to have his license reinstated. The district court was unpersuaded by Myles' renewed objections and entered an order concluding that the June 25, 2004 report and decision affirming the March 12, 2004 report and decision was not arbitrary, capricious, or an abuse of discretion, was supported by substantial evidence, and was in accordance with the law.

As the district court had not addressed the issue of contempt, a hearing in district court on that specific issue was set. At that hearing on February 21, 2005, the court not only addressed the contempt issue, but also addressed the driver's license issue and the issue of Myles' paternity as to Ryan. The court's decisions were memorialized in two separate orders. The contempt and driver's license issue were addressed in an order filed on March 30, 2005. The paternity issue was addressed in a subsequent order filed on April 25, 2005.

With regard to contempt, the court found that Myles now owed approximately $11,000 in child support and interest and found that Myles had willfully failed to comply with his child support responsibilities. As such, the court determined that Myles was indeed in contempt of court and sentenced him to a period of incarceration. However, the court ordered the sentence suspended provided that Myles "purge" the contempt order. To purge the order, Myles had to submit a lump sum payment of approximately $4,400 to the Department on or before March 23, 2005. As to the driver's license issue, the court ordered the Department to initiate restoration of Myles' driving privileges if Myles submitted the lump sum payment in a timely fashion. As to the paternity issue, the court granted Myles' request for paternity testing and specifically noted that Ryan's mother did not object to the request. The order clearly states, however, that Myles would be responsible for the costs associated with the testing and that "[s]uch testing [would] not relieve [Myles] of his obligation to pay child support and to comply with the terms and conditions" of the December 1994 child support order.

In November 2005, well after the lump sum payment due date, the Department requested another hearing before the district court on the issue of contempt. At that hearing in December 2005, Myles sought relief from both the December 1994 child support order and from the contempt order on the ground that Ryan was not his son.

5

To more fully examine the issues, the district court ordered the Department and Myles to brief the issue. In the interim, Myles was ordered to continue making support payments.

The Department filed its brief in a timely fashion; Myles failed to submit a brief. At a hearing on February 24, 2006, the district court determined that Myles was not entitled to relief from his child support obligations to Ryan or to relief from the contempt order. The court found that Myles now owed approximately $20,000 in child support and unpaid interest, found Myles to be in willful contempt, and remanded him into the custody of the Doña Ana Detention Center to serve a period of incarceration to begin immediately following the hearing and not to exceed thirty days. The court allowed Myles yet another opportunity to purge the contempt order and secure his immediate release from detention provided he pay $2,500 in child support. An order memorializing these decisions was entered on March 6, 2006. The record indicates that Myles served the entire thirty-day sentence.

In June 2009, the Department filed yet another motion for order to show cause with the district court and therein requested the court to order Myles to appear and show cause why he should not again be found in contempt and imprisoned. The documents attached to the motion appear to indicate that Myles now owed approximately $40,000 in back child support and unpaid interest. That motion was

6

granted, and Myles was ordered to appear before a hearing officer on December 2, 2009.

Myles responded by filing two motions with the district court: a pro se motion for continuance, which was granted, and a pro se Rule 1-060 motion in which he asked the court to set aside "the original [r]eport and [d]ecision filed December 2, 1994 and subsequent orders for support based on that order." Prior to filing these motions, Myles secured the assistance of counsel. The motions expressly indicate, however, that counsel did not draft the motions but only provided "document preparation."

Myles' Rule 1-060 motion was heard on February 23, 2010. Following that hearing, the parties entered proposed findings of fact and conclusions of law. Myles' proposed findings, drafted by counsel, contain falsifications. Counsel asserted that Myles "did not admit paternity at any hearing before the [c]ourt on the [p]etition to [d]etermine [p]arent-[c]hild [r]elationship, whether before a [d]istrict [j]udge or [c]hild [s]upport [h]earing [o]fficer." This is not true; Myles did admit paternity of Ryan at the November 1994 hearing. This misrepresentation is repeated in the proposed conclusions of law.

On March 8, 2010, Myles filed a motion to recaluculate child support and determine arrearages in light of the fact that Ryan had emancipated. In that motion,

Myles again raised the issue of his driver's license and asked that it be reinstated. At the hearing on that motion on March 22, 2010, the court determined that it lacked authority to address the driver's license issue and concluded that the matter of reinstatement was for the Department to decide. This determination was memorialized in an order regarding timesharing that was filed on April 28, 2010.

On March 25, 2010, the Court entered its findings of fact and conclusions of law on Myles' Rule 1-060 motion. The court erroneously adopted Myles' false statement that he had never admitted paternity of Ryan. The findings were later amended, on the motion of the Department, to reflect the fact that Myles had indeed admitted that Ryan was his son. In any event, the court denied Myles' Rule 1-060 motion because the motion had not been filed within one year of the court's order. Our review of the recording of the hearing reveals that the order to which the court was referring was the March 6, 2006 order. A final order denying Myles' Rule 1-060 motion was entered in another order filed on April 28, 2010. Myles had already filed a motion to reconsider before that final order was even entered. The motion to reconsider was denied on May 26, 2010.

Myles filed an initial notice of appeal on May 27, 2010, then filed a motion to extend the time to file the notice of appeal, and filed a second notice of appeal on June 28, 2010. He appeals the April 28, 2010 final order denying his Rule 1-060 motion

8

and the May 26, 2010 order denying his motion to reconsider. He also appeals an order dated May 27, 2010 wherein, he claims, "he was not restored his driver's license." We have reviewed the May 27, 2010 order and there is no mention of the driver's license issue.

**DISCUSSION**

Before we assess Myles' arguments on appeal, there are several preliminary matters which require our attention. Counsel for Myles submitted only a brief in chief; no reply brief was filed. In its answer brief, the Department correctly observed that the brief in chief was deficient in several respects: it was not correctly formatted, the standard of review was not identified for each argument on appeal, and it did not include citations to the record proper. As such, the Department asked that we dismiss Myles' appeal.

In response, counsel for Myles conceded that the brief was deficient in the manner identified by the Department and asked for an opportunity to amend her submission. We granted that request, and counsel submitted an amended brief in chief. That document is also deficient. Counsel did not adequately address the absence of record cites. In the statement of the case section, counsel provided only a scant spattering of citations to the record. Although counsel added a standard of review section, the standard she identified is incorrect given the issues on appeal.

9

Finally, although counsel was not instructed to remedy this issue, we observe that there are varying arguments and assertions throughout the argument and authority section of the amended brief that are not accompanied by citation to authority.

In a letter to this Court explaining the steps taken to correct the deficiencies in the initial brief in chief, counsel appears to indicate that time constraints and her workload prevented her from amending her brief so that it fully complied with our rules of appellate procedure. She concludes her letter by assuring us that she'll "never take another pro bono appeal." This remark troubles us as it appears counsel is suggesting that the deficiencies in briefing are attributable to the fact that she is representing Myles pro bono.

Our rules of professional conduct instruct that "[t]he legal profession has a responsibility to provide legal services to those unable to pay. In fulfilling this responsibility, a lawyer should aspire to: . . . provide legal services without fee or expectation of fee to: . . .persons of limited means[.]" Rule 16-601 NMRA. We commend counsel for her efforts to meet this aspirational goal. We have concerns, however, that the representation provided in this matter did not meet the minimum level of competence. *See* Rule 16-101 NMRA ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.").

Our concerns do not end there.

Myles has misrepresented the facts underlying this matter. While testifying at the hearing on his Rule 1-060 motion, he falsely denied having admitted that Ryan was his child, denied having agreed to have the issue of Ryan's parentage determined at the November 1994 hearing, and denied having been informed that the child support obligations imposed on him at the November 1994 hearing were based on the fact that he was adjudicated the parent of both Ryan and Marquisha. Counsel perpetuated these misrepresentations in her proposed findings of fact and conclusions of law that the district court adopted. The Department, not counsel, saw to it that these misrepresentations were corrected. *See* Rule 16-303(A)(1) NMRA ("A lawyer shall not knowingly: . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"). Having expressed our concerns, we turn to the arguments on appeal.

Myles first asserts that the district court erred in denying his rule 1-060 motion. He appears to argue that the district court erred in construing Rule 1-060(B). He asks that we "set aside the judgment that established . . . Myles was the father of Ryan," and "remand the case so that child support might be properly calculated for" Myles' one biological child. Myles makes varying arguments on appeal to support his claim of error. We address them in turn, but first establish our standard of review and

provide a general outline of the law surrounding Rule 1-060(B).

"Relief under Rule [1-0]60 is discretionary with the trial judge and will be reviewed only for an abuse of that discretion." *Click v. Litho Supply Co.*, 95 N.M. 419, 420, 622 P.2d 1039, 1040 (1981). "Discretion, in this sense, is abused only when the trial judge has acted arbitrarily or unreasonably." *Conejos County Lumber Co. v. Citizens Sav. & Loan Ass'n*, 80 N.M. 612, 614, 459 P.2d 138, 140 (1969).

> In order to vacate a judgment under Rule [1-0]60(b), the movant must show the existence of a meritorious defense or cause of action and proper grounds for reopening the judgment. Six potential grounds for vacating a final judgment are provided under Rule [1-0]60(b): (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

*Thompson v. Thompson*, 99 N.M. 473, 475, 660 P.2d 115, 117 (1983) (citation omitted). "A motion under [Rule 1-0]60(b)(1), (2) or (3) must be filed within one year[.]" *Thompson*, 99 N.M. at 475, 660 P.2d at 117. A motion under "Rule [1-0]60(b)(4), (5) and (6) may be presented within a 'reasonable time.'" *Thompson*, 99 N.M. at 475, 660 P.2d at 117. "In order to obtain relief under [Rule 1-0]60(b)(6), the movant must show exceptional circumstances, other than those advanced under [Rule 1-0]60(b)(1) through (5)[.]" *Thompson*, 99 N.M. at 475, 660 P.2d at 117 (emphasis

12

omitted). Exceptional circumstances are those that, "in the sound discretion of the trial judge, require an exercise of a reservoir of equitable power to assure that justice is done." *Stein v. Alpine Sports, Inc.*, 1998-NMSC-040, ¶ 17, 126 N.M. 258, 968 P.2d 769 (internal quotation marks and citation omitted).

Despite having dedicated nearly ten pages of his brief to the propriety of the district court's ruling on his Rule 1-060 motion, Myles has provided limited guidance regarding the applicability of Rule 1-060(B). He makes a passing reference to Rule 1-060(B)(6) and correctly notes that a judgment may be vacated under this subsection of the rule only if "exceptional circumstances" are present. He does not, however, specifically identify or assert that exceptional circumstances exist in this case. Then, at the very end of the section of his brief dealing with Rule 1-060(B), he claims that misconduct by the Department is a factor in determining whether relief is available under Rule 1-060. He cites two cases from Alaska for this proposition.

We will begin with Rule 1-060(B)(1), (2), and (3) and hold that the district court did not err to the extent it held that Myles is precluded from seeking relief under the three subsections of the rule. Myles filed his Rule 1-060 motion on December 2, 2009, and, in that motion, requested relief from the December 2, 1994 order and "subsequent orders for support based on that order." In our view, Myles' motion was clearly directed at securing relief from the 1994 order as this is what his motion

expressly states and because the December 1994 order is what gave rise to Myles' child support responsibilities for Ryan. The district court, however, understood the motion as a request for relief from a later order, dated March 6, 2006, where the court determined that Myles was subject to the terms of the December 1994 support order and concluded that Myles' contention that he is not Ryan's father is no defense to his child support responsibilities. Whether the motion was directed at the December 1994 order as we believe, or the March 2006 order as the district court understood, the motion was filed one year after either date and, therefore, Myles cannot avail himself of Rule 1-060(B)(1),(2), or (3). Similarly, Myles has not argued, and we see no basis for concluding, that Rule 1-060(B)(4) or (5) apply here.

With regard to Rule 1-060(B)(6), the Department contends that Myles did not rely or refer to this specific subsection of the rule below and, alternatively, failed to identify on appeal any exceptional circumstances which would bring his request for relief within the ambit of this subsection of Rule 1-060(B). The Department is correct on both counts.

Myles' Rule 1-060 motion was filed pro se. It is almost entirely comprised of rhetorical attacks on the honesty and integrity of the Department. It does not include a single case citation or a single reference to a specific subsection of Rule 1-060 and does not provide any guidance as to how Rule 1-060(B)(6) might apply. Although his

14

motion was filed pro se, Myles was represented by counsel at the hearing on his motion. We have listened to the recording of that hearing and have discovered that Myles' counsel also failed to make any specific arguments about the varying subsections of Rule 1-060(B). Counsel did refer to New Mexico authority, but none addressing whether Myles was entitled to relief under Rule 1-060(B)(6). Finally, we observe that the district court, when ruling on Myles' Rule 1-060 motion on February 23, 2010, expressly stated that it understood Myles motion as a request for relief under Rule 1-060(B)(2) or (3). For these reasons, we conclude that Myles failed to preserve the specific assertion that he is entitled to relief under Rule 1-060(B)(6). *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"); *Conejos County Lumber Co.*, 80 N.M. at 614, 459 P.2d at 140 (declining to entertain an argument about the applicability of Rule 1-060 where the appellant had failed to raise that argument at the hearing on the Rule 1-060 motion).

Even if this were not the case and preservation were not an issue, we would nonetheless conclude that Myles is not entitled to relief under Rule 1-060(B)(6) because Myles has failed to demonstrate exceptional circumstances. Myles has not argued on appeal that exceptional circumstances are present here. Rather, he merely provides us a disparate assortment of arguments.

15

Myles claims that he is entitled to relief because he represented himself pro se at the time Ryan was determined to be his son. We do not see how this amounts to exceptional circumstances. We have previously explained that "a pro se litigant must comply with the rules and orders of the court, enjoying no greater rights than those who employ counsel." *Newsome v. Farer*, 103 N.M. 415, 419, 708 P.2d 327, 331 (1985) (emphasis omitted).

Myles claims that "[t]he petition with which he had been served didn't give him notice that the issue of Ryan['s] paternity" would be adjudicated. The record reflects that, at the hearing on the petition for Marquisha, Myles admitted that Ryan was his son and informed the Department that he wished to include Ryan in the proceedings and resolve the issue of Ryan's parentage. Myles cannot complain that he did not have notice that Ryan's parentage would be adjudicated when he specifically requested that this occur. *See* Rule 1-015(B) NMRA ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). Myles' alleged notice issue does not give rise to exceptional circumstances.

Myles cites several statutes governing the manner in which parentage may be determined. We are unable to comprehend the significance of these statutes in relation to Myles' matter. Two of the statutes cited, NMSA 1978, Section 40-11A-623(A)

16

(2009), and NMSA 1978, Section 40-11A-631(D) (2009), were not in existence at the time Ryan's parentage was determined. Myles acknowledges this and does little to explain how these statutes are relevant. Myles also directs us to statutory language purportedly derived from the version of NMSA 1978, Section 40-11-15 (1993) (repealed 2009) in effect in 1994. Our research reveals that the 1994 version of Section 40-11-15 does not include the cited language. Myles' statutory arguments do not demonstrate exceptional circumstances.

Myles appears to argue that there are inadequate protections available for individuals who assume parental responsibilities of children and claims that the state has an obligation to avoid false establishment of parentage. Myles asserts that this issue is somehow connected with an alleged gender bias in our courts. We neither understand these arguments nor see how they give rise to exceptional circumstances. Absent further guidance, we decline to entertain these specific claims. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory and inadequately developed argument).

Myles asserts that he has been placed in a condition of "involuntary servitude" and appears to claim that the December 1994 child support order violates the Thirteenth Amendment to the United States Constitution. We decline to consider this bold contention as Myles has done next to nothing to explain the basis for this claim.

*See id.*

Finally, Myles asserts that the Department has acted in a manipulative, devious, and negligent manner. Myles bases this claim on the fact that the Department purportedly did not make adequate attempts to secure child support from Ryan's actual father. Myles does not explain how this gives rise to exceptional circumstances and neither cites the record nor case law to support this claim. As such, we decline to consider this argument. *See Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 114 N.M. 103, 108, 835 P.2d 819, 824 (1992) (declining to consider arguments based on factual allegations which were unsupported by citations to the record proper); *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (declining to consider a proposition that was unsupported by citation to authority). In conclusion, we hold that the district court committed no error in denying Myles' Rule 1-060 motion. We proceed to the next issue on appeal.

Myles' second issue concerns his driver's license. He argues that the district court erred in concluding that it lacked jurisdiction to decide whether the Department should reinstate his license. There are many problems with this argument. We focus on only two.

First, Myles raised the issue of his license for the first time in March 2004, in

objections to the March 12, 2004 report and decision and certification for contempt. As stated earlier, Myles' driving privileges were not discussed in the March 12, 2004 report and decision, and we do not know why Myles brought that issue up for the first time in his objections. We have never seen nor been directed to an order or judgment of revocation, and we have no way of knowing when, or under what authority, the revocation was carried out. "Matters outside the record present no issue for review." *State v. Reynolds*, 111 N.M. 263, 267, 804 P.2d 1082, 1086 (Ct. App. 1990).

In his notice of appeal, Myles states that he is appealing from the district court's May 27, 2010 judgment and order and claims that the issue of his driver's license was addressed in that order. We have reviewed that order and found no mention of the driver's license issue. The district court addressed the driver's license issue and determined that it lacked jurisdiction to decide whether reinstatement was appropriate at a hearing on March 22, 2010. That determination was memorialized in an order filed on April 28, 2010. Myles did not appeal that order.

We decline to further address the driver's license issue.

**CONCLUSION**

For these reasons, the judgment of the district court is affirmed.

**IT IS SO ORDERED.**

19

_____

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**


_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**CYNTHIA A. FRY, Judge**