909 P.2d 754

**SAN PEDRO MINING CORPORATION, Plaintiff–Appellant,**

v.

**The BOARD OF COUNTY COMMISSIONERS OF SANTA FE COUNTY, New Mexico, Consisting of Richard Anaya, Mark "Marcos" Trujillo, Javier Gonzales, Betty Platts, and Nancy Rodriguez, Defendants–Appellees,**

and

**Paula O'Neil, Stanley Waldron, and the San Pedro Neighborhood Association, Inc., Intervenors–Appellees.**

No. 16,103.

Court of Appeals of New Mexico.

Dec. 1, 1995.

Certiorari Denied Jan. 8, 1996.

James Bruce, Hinkle, Cox, Eaton, Coffield & Hensley, P.L.L.C., Santa Fe, for Plaintiff–Appellant.

Steven Copelman, County Attorney, Matthew Ortiz, Deputy County Attorney, Santa Fe, for Defendants–Appellees.

Tom Udall, Attorney General, Alletta Belin, Ass't. Attorney General, Santa Fe, for Amicus Curiae State.

Joseph F. Canepa, Canepa, Vidal, Fitzgerald & Bell, P.A., Santa Fe, for Intervenors–Appellees.

*OPINION*

ALARID, Judge.

1. Plaintiff is the owner of a mine located in Santa Fe County. The Board of County Commissioners (County) held an administrative hearing and ruled that Plaintiff's mine is subject to the permit requirements of Santa Fe County's Land Development Code. Plaintiff requested certiorari review from the district court, and the district court affirmed. Plaintiff appeals the district court's decision. We affirm.

**FACTS**

2. Plaintiff's mine is located in an area historically mined for gold, silver, and copper. The mine was relatively inactive in the 1980s and early 1990s. In 1991, the County enacted a comprehensive Land Development Code that included extensive permit requirements for mines. The mining section of the code was then amended in 1993. Both the 1991 and 1993 ordinances included grandfathering provisions allowing "existing mines" (as defined by the ordinance) to continue operations without obtaining a permit. Both ordinances also contain provisions allowing a mine or exploration operation to remain in a state of "temporary cessation" for no more than three years, and to resume operations within that three-year period without obtaining a new permit. Early in 1994, Plaintiff was carrying on certain activities at the mining site. The County investigated and decided that the activities were illegal because Plaintiff had not obtained a permit under either the 1991 or 1993 ordinance. The County ordered Plaintiff to cease its activities or face legal action.

3. Plaintiff filed a district court action for an injunction and a declaratory judgment, maintaining that its mine was not subject to the permit requirements of either ordinance. The district court ordered the County to hold proper administrative proceedings to determine whether the ordinances were applicable to Plaintiff. During these proceedings, Plaintiff presented testimony from a number of witnesses and introduced many exhibits.

The County, as noted above, determined that Plaintiff's mine was not excepted from the permit requirements, and Plaintiff filed a petition for writ of certiorari with the district court.

4. The district court allowed two new participants: Intervenors, a neighborhood association opposed to Plaintiff's plans to mine without first obtaining a permit, and Amicus Curiae, the State of New Mexico. The State's involvement in the case was limited to briefing an issue raised by Plaintiff concerning the new Mining Act, NMSA 1978, §§ 69–36–1 to –20 (Repl.Pamp.1993) (the Act), enacted in 1993. Plaintiff maintained that the Act and the regulations promulgated pursuant to the Act preempted the County's power to regulate mining activity within its jurisdiction, and the State's brief responded to that contention.

5. The district court upheld the County's decision after reviewing the exhibits and record of the administrative proceedings, and this appeal has resulted. On appeal, Plaintiff contends that the County's ordinances have been preempted by the Act and the State's regulations and maintains that, even if no preemption occurred, it is nevertheless exempt from the permit requirement under the terms of those ordinances.

·6. For ease of reference, throughout this opinion we refer to the parties opposing Plaintiff's position as the County, whether the specific arguments made in response to Plaintiff were made in the County's brief, the Intervenors' brief, or the State's brief.

## I. PREEMPTION

7. The district court ruled that the Act and its regulations did indeed preempt the County's regulatory authority over mining activities. The district court also ruled, however, that the County retains some residual zoning power, and that under that residual power it could require Plaintiff to obtain a permit and impose conditions upon the grant of such a permit. Under the district court's decision, therefore, the County's permit requirements can be upheld only if their promulgation was a proper exercise of the County's zoning power rather than its regulatory power. To address this decision, Plaintiff concedes that the County retains some zoning power, but contends that the only attribute of that authority is the ability to decide whether mining can occur at a certain location. That is, Plaintiff argues that the County can determine where mining activity can take place, but cannot at all regulate how it will take place, and maintains that the conditions imposed on permit issuance under the County's ordinances exceed the County's zoning power.

8. We do not need to decide whether the County's authority over mining should be termed a zoning power or regulatory power, or to delineate the exact limitations of a power to zone. The question in this case is whether the County's power to do anything other than decide the location of mining activity has been preempted by the passage of the Act and by the promulgation of the regulations designed to carry out that Act. We hold that such preemption has not occurred.

### A. Express Preemption

■ 9. A local governmental body's ability to regulate in an area may be preempted either expressly, by the language of a statute, or impliedly, due to a conflict between the local body's ordinances and the contents, purposes, or pervasive scheme of the statute. See Jicarilla Apache Tribe v. Board of County Comm'rs, 118 N.M. 550, 554, 883 P.2d 136, 140 (1994) (discussing federal-state preemption); Little Falls Township v. Bardin, 173 N.J.Super. 397, 414 A.2d 559, 566 (App.Div.1979) (court must determine whether state scheme is so pervasive that it effectively precludes the co-existence of municipal regulation, or whether the local regulation conflicts with the state statute or stands as an obstacle to accomplishing the legislature's objectives). A local government is presumed to retain the power to exercise its normal authority over an activity, so the intention of the legislature to preempt local control must be clearly stated if express preemption is to result. See State ex rel. Schillberg v. Everett Dist. Justice Court, 92 Wash.2d 106, 594 P.2d 448, 450 (1979) (en banc) (a statute will not be construed to take away municipal power unless this intent is clearly and expressly stated).

10. Plaintiff argues that the legislature has expressly preempted local authority over mining in Section 69–36–4(B) of the Act. That provision states: "After the effective date of the New Mexico Mining Act and until the commission adopts regulations necessary to carry out the provisions of the New Mexico Mining Act, county mining laws or ordinances shall apply to mining within their jurisdictions in New Mexico." It is certainly possible to read this Section as Plaintiff does, to mean that once the referenced regulations are adopted, no county regulation or ordinance shall apply to mining activity, whether or not the ordinance conflicts with the state regulations or the statute. It is also possible, however, that the legislature included this provision only to ensure that local ordinances governing the same matters as the statute would not be immediately rendered ineffective by the mere passage of the statute, which would have left those matters uncontrolled pending the commission's adoption of the regulations required by the statute. Given the absence of an explicit prohibition of any type of local regulation of mining after the adoption of the regulations, and given the fact that the Act and its regulations are not comprehensive in scope but govern only certain aspects of mining, we believe the Act is ambiguous concerning its effect on local mining ordinances. *Cf.* NMSA 1978, § 76–4–9.1 (Cum.Supp.1992) (statutory provision clearly and unambiguously precluding local control over pesticides). We therefore hold that no express preemption of those ordinances resulted from the passage of the Act or from the adoption of the regulations.

### B. Implied Preemption

11. Even in the absence of express preemption by the legislature, a county ordinance may be preempted if it conflicts with a state statute or regulation, or if the statute demonstrates an intent to occupy the entire field. *See Casuse v. City of Gallup,* 106 N.M. 571, 573, 746 P.2d 1103, 1105 (1987) (any law that clearly intends to preempt a governmental area should be sufficient without necessarily stating that affected municipalities must comply and cannot operate to the contrary); *see also Baker v. Snohomish County,* 68 Wash.App. 581, 841 P.2d 1321,

1323 (1992) (when state enacts a general law on a subject, power of municipality to enact ordinances regarding same subject ceases unless there is room for concurrent jurisdiction), *cert. denied,* 121 Wash.2d 1027, 854 P.2d 1085 (1993); *Little Falls Township,* 414 A.2d at 566. We must, therefore, examine the Act and its regulations to determine whether they impliedly preempt local control over any and all aspects of mining.

12. It is apparent that the primary focus of both the Act and the regulations is the minimization of damage to the land being mined, both during the mining and after the mining is finished. Both require that specific closeout plans, including plans for reclamation, be submitted prior to obtaining a mining permit and that the mining activity be conducted in such a way as to minimize erosion and to ensure that toxic wastes do not leave the permit area or contaminate water sources. Section 69–36–7(H); New Mexico Mining Act Rules, Energy, Minerals & Natural Resources Dept., § 5.7 (July 12, 1994). In addition, the regulations are specific about the requirements for diverting streams if necessary, constructing impoundments of water, and constructing roads. *Id.* §§ 5.7(C)(2)(e), (f), and (i). Significantly, neither the Act nor the regulations contain any mention of development issues with which local governments are traditionally concerned, such as traffic congestion, increased noise, possible nuisances created by blasting or fugitive dust, compatibility of the mining use with the use made of surrounding lands, appropriate distribution of land use and development, and the effect of the mining activity on surrounding property values. *Cf. C & M Sand & Gravel v. Board of County Comm'rs,* 673 P.2d 1013, 1017 (Colo.App. 1983) (discussing state statute's lack of mention of issues of traditional local concern); *Mayor of South Brunswick v. Covino,* 142 N.J.Super. 493, 362 A.2d 51, 53 (Ct.App.1976) (no state preemption where local ordinance protected general public from accidents and preserved safe and aesthetic condition of the property as well as the surrounding lands, while the state statute addressed primarily the safety of the mine's employees). The County's ordinance does, in part, address

many of these concerns. Santa Fe County Ordinance 1993–3, §§ 5.5.1–.5 (1993). Therefore, there is room for concurrent jurisdiction and regulation, with the County's ordinance regulating aspects of the mining activity that concern off-site safety, compatibility with surrounding property uses, and other matters left unaddressed by the Act and regulations. Plaintiff can accordingly be required to obtain County as well as State approval for its mining activities. *See Baker*, 841 P.2d at 1326 (where state law was almost totally directed to reclamation concerns, and gave no direction as to land use considerations, no preemption occurred); *C & M Sand & Gravel*, 673 P.2d at 1017–18 (because primary concern of state statute was reclamation of land affected by mineral extraction, multilayer regulatory and permit system intended by legislature); *Hulligan v. Columbia Township Bd. of Zoning Appeals*, 59 Ohio App.2d 105, 392 N.E.2d 1272, 1274 (1978) (landfill operators needed endorsement of both state and town because town's zoning ordinance was concerned with land use and planning and insuring health and welfare of the community while the state statute's purposes were to ensure compliance with clean air or water quality standards, and to regulate the disposal and handling of solid wastes).

■ 13. To the extent the County's ordinance actually conflicts with the Act or the regulations, the ordinance is preempted. *See In re Briarcliff Assocs., Inc.*, 144 A.D.2d 457, 534 N.Y.S.2d 215, 217–18 (1988) (town ordinance could not regulate excavation and mining activities, due to express preemption by legislature, but could regulate reclamation because the statute did not address that issue), *cert. denied*, 74 N.Y.2d 611, 546 N.Y.S.2d 555, 545 N.E.2d 869 (1989). Inasmuch as Plaintiff has argued only that the County's ordinance is entirely preempted, we need not examine the regulations and the ordinance in order to provide what would amount to an advisory opinion regarding areas of actual conflict.

14. In sum, we hold that the Act and the regulations do not completely preempt the County's regulation of Plaintiff's activities. The County may, to the extent its ordinance does not conflict with the Act or the regulations, require compliance with its ordinance.

## II. APPLICATION OF THE COUNTY'S ORDINANCES TO PLAINTIFF

15. Plaintiff contends that even if the County's ordinance has not been preempted, Plaintiff's operations are still exempt from the permit requirements of the ordinance. Plaintiff's arguments are based on its interpretations of the ordinances preceding the ordinance that is currently in effect, the 1993 ordinance.

### A. Code Map 30 Argument

■ 16. Plaintiff maintains that its mine was already zoned for mining before either the 1991 ordinance or the 1993 ordinance was adopted. This argument is based on a land use code adopted by the County in 1980. As part of that code, the County was divided into areas in which certain uses would be allowed. Code Map 30 delineated places where mining would be allowed, subject to the requirements of the code, and these areas were called mining zones. Plaintiff's mine is located within one of these mining zones. According to Plaintiff, this established a zoning for its mine that allowed mining to take place without meeting the requirements imposed by the 1991 ordinance or the 1993 ordinance. Plaintiff maintains that application of the permit requirement would be an impermissible down-zoning of its property.

17. The County's Land Administrator and the Board of County Commissioners both disagreed with Plaintiff's interpretation of the effect of Code Map 30 and the 1980 ordinance. According to them, Map 30 did not establish zones in which unrestricted mining could occur. Instead, the ordinance and Map 30 simply set out areas eligible for consideration for mining uses, due to the fact that the areas had contained mines in the past. The Land Administrator testified by affidavit that a prospective mine or the extension of an existing mine would still have to go through the zoning application process.

■ 18. The Administrator's and the Board's interpretation is entitled to defer-

ence unless the 1980 ordinance and Map 30. are clear and unambiguous. *See High Ridge Hinkle Joint Venture v. City of Albuquerque,* 119 N.M. 29, 38, 888 P.2d 475, 484 (Ct.App.) (if a zoning code is ambiguous, courts will ordinarily defer to the interpretation of the body that enacted the code), *cert. denied,* 119 N.M. 20, 888 P.2d 466 (1994). As we discuss below, our review of the portion of the 1980 ordinance provided to us indicates that the County's intent in establishing "mining zones" is not clear, and Plaintiff has failed to supply us with enough of the ordinance to allow us to contradict the County's position. In addition, the County's position appears reasonable. We will therefore defer to the County's interpretation of the ordinance.

19. The only portion of the ordinance that we could locate in the record proper or in the exhibits consisted of the title page of the ordinance, one page of the ordinance itself, and two pages of maps. Plaintiff's brief in chief acknowledges that the 1980 ordinance contains seven pages of regulations governing mining, of which we have been able to review only one page. In addition, we have not been supplied with any of the non-mining portions of the ordinance, which presumably could provide insight regarding whether the establishment of certain "zones" automatically conferred enforceable zoning rights within those zones. As we pointed out above, there was evidence from the Land Administrator that Map 30 did not, by itself, confer permission to engage in mining activity upon any property located within a mining zone. Plaintiff has pointed to no evidence that would contradict that assertion, preferring to rely instead on the language contained in the portion of the ordinance that has been provided to this Court. That language indicates that mining uses shall be allowed in the mining zones "provided the requirements of this section have been met." Without the rest of the ordinance, we cannot determine what those other requirements are.

20. We also believe that the County's interpretation of the code is more reasonable than an interpretation that would allow any sort of mining activity to take place, unregulated, within any part of the areas designated on Map 30 as mining zones. We therefore hold that Plaintiff has failed to supply a sufficient record to persuade us that we should not give deference to the County's interpretation of its own ordinance. *See State v. Jim,* 107 N.M. 779, 780, 765 P.2d 195, 196 (Ct.App.) (it is appellant's burden to bring up a record sufficient for review of the issues raised on appeal), *cert. denied,* 107 N.M. 720, 764 P.2d 491 (1988).

**B. Grandfathering**

█ 21. Plaintiff also contends that it is exempt from the permit requirements under the terms of the 1991 and 1993 ordinances. The 1991 ordinance allowed existing mines to continue operations, provided that reclamation plans and a description of operations were submitted to the County. Plaintiff submitted the required plan as well as documents showing that exploration activity had been conducted in 1991. Plaintiff maintains that under the 1991 ordinance, this submission established its mine as an "existing mine" as defined by the ordinance, and that an existing mine is not subject to the permit requirements of either the 1991 or the 1993 ordinance. Plaintiff's argument is that there is no difference, under the ordinances, between exploration activity and extraction activity. Therefore, Plaintiff argues a mine site such as Plaintiff's that had sufficient exploration activity to qualify for existing mine status is automatically grandfathered in for both exploration and extraction operations, even if no extraction activity was occurring at the time Plaintiff submitted its description of operations to the County.

22. The County's position is that Plaintiff's submissions established existing mine status, but only for exploration operations. According to the County, a tract of land may be grandfathered in for exploration if that was the activity described in the submission, or for extraction if that was the activity occurring, or for both if both types of operations were included in the document submitted to the County. It argues that submitting a reclamation plan and description of operations covering only an exploration operation, however, as Plaintiff did in this case, would not suffice to obtain existing mine status for extraction as well as exploration.

23. As was the case with the interpretation of the 1980 ordinance and Map 30, the grandfathering and existing mine provisions of the 1991 and 1993 ordinances are ambiguous, and the County's position is a reasonable interpretation of the ordinances. We therefore give deference to that position. *See High Ridge Hinkle,* 119 N.M. at 38, 888 P.2d at 484. The 1991 ordinance does not explicitly provide that the existing mine provision may be separated to grandfather in exploration activity only, or extraction activity only. However, the ordinance distinguishes between exploration and extraction activity throughout its provisions. For example, the definition of "existing mine" is "any exploration *or* extraction operation which existed prior to the effective date of this code as amended." Santa Fe County Ordinance 1992–1, § 5.2 (emphasis added) (1991 Ordinance).[1] Similarly, a "permit" is defined as "an authorization to conduct mineral exploration and/or mining land uses," and a "mine site" is defined as "the area of land in which the exploration, mine development, *or* extraction activities will be situated." *Id.* (Emphasis added.) In particular, in the section relied on most heavily by Plaintiff, the 1991 ordinance states that to establish a mining district for the purposes of mineral exploration *or* extraction, existing mines should submit the reclamation plan and description of current operations previously mentioned in this opinion. *See id.* § 5.4.

24. In our opinion, the County's interpretation of the ordinance is most reasonable— existing mine status could be obtained for an exploration operation or an extraction operation, or both, depending on the materials submitted to the County in accordance with the 1991 ordinance. This interpretation comports with one of the main purposes of the ordinance, which was obviously directed at regulating exploration or extraction activity to a much greater extent than had previously been the case. Given this purpose, it would not make sense to allow an ongoing exploration-only operation to grandfather in an extraction operation as well, or vice versa. The

submissions made by Plaintiff indicated that exploration was the only activity occurring in 1991, and the only activity for which reclamation would be needed. Plaintiff, therefore, obtained existing mine status only for an exploration operation, and not for the extraction activity that Plaintiff later wished to undertake.

**C. Temporary Cessation**

25. Plaintiff also contends that even if its property was not previously zoned for mining by the 1980 code, and it did not obtain existing mine status for an extraction operation, it is exempted from the permit requirements by another section contained, in different versions, in both the 1991 and 1993 ordinances. For purposes of this opinion only, we apply the 1991 ordinance, accepting Plaintiff's argument that the provisions of the 1993 ordinance should not apply retroactively. The 1991 ordinance's section allows a mineral exploration operation or a mining operation that is in a state of temporary cessation to remain in that state for up to three years from the effective date of the 1991 ordinance. 1992–1 Ordinance, § 5.3.4. If operations are resumed at any time within that three-year period, a new permit is not required for those resumed operations. *Id.* If there is no resumption of operations within the relevant period, the exploration or mining activity is deemed abandoned. *Id.* Finally, sporadic or intermittent mining or exploration activity does not interrupt the three-year cessation period. *Id.*

26. Plaintiff maintains that it resumed substantial operations within three years of February 16, 1991, the effective date of the 1991 ordinance. Plaintiff's first argument may be dealt with easily, given our resolution of the preceding issue. Plaintiff points to the substantial exploration activity it engaged in during the relevant time period, and states that this should be sufficient to establish resumption of the mining activity that had temporarily ceased. As we pointed out above, the ordinance distinguishes between exploration operations and extraction opera-

---

1. Although Plaintiff cited to the 1991 Ordinance, the 1992 Ordinance was the only Ordinance supplied to this Court. It recompiled and incorpo-

rated the 1991 Ordinance. We therefore cite to the 1992 Ordinance even though we call it the 1991 Ordinance in this Opinion.

tions. Performing explorations, no matter how extensive, is different from mining, and under the ordinance exploration activity cannot interrupt the running of the temporary cessation period for extraction operations, just as existing mine status for exploration operations could not confer existing mine status for extraction activity.

27. Plaintiff argues that even if it was required to commence extraction operations during the relevant three-year period, it did so to the extent necessary to avoid triggering the new permit requirement. To address this argument, we are required to review the evidence presented during the administrative proceedings. We view the evidence in the light most favorable to the Board's decision, although we do not completely disregard conflicting evidence. *See Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 114 N.M. 103, 114, 835 P.2d 819, 830 (1992). We will uphold the Board's decision if we are satisfied that evidence in the record demonstrates that it was reasonable. *Id.*

28. The evidence presented to the Board showed that Plaintiff's mine had in the past produced copper, gold, and silver, but has been essentially inactive in recent years. In the early 1990's, Plaintiff began to investigate the possibility of producing industrial-grade garnet from the same ore bed that had contained the previously-mined minerals. Plaintiff contracted to have a number of exploration holes drilled, and to have studies prepared concerning the economic feasibility of mining, milling, and marketing industrial-grade garnet. Plaintiff did not sell any garnet during the relevant three-year period. A number of documents submitted to the Board as exhibits, such as Plaintiff's own balance sheets and the reclamation plan it submitted to the County, indicate that, at least through April 1993, no mining was occurring on the property. Other documents show that a substantial amount of investigation and testing of the garnet ore occurred, and a number of reports concerning the garnet's possible commercial potential were generated.

29. The only evidence supporting a finding that mining did occur on the property was testimony from a company officer who claimed that "bulk sampling" of the garnet ore had been conducted in September 1992, April 1993, and September 1993, and that 4000 tons of garnet ore had been extracted in January 1994. There was also evidence, however, that when County officials, including at least one member of the Board, visited the mine site at Plaintiff's invitation in late January and again in early February 1994, they were told by the same company officer or by that officer's son that only thirty tons of garnet ore had been extracted up to that point, that there were currently no employees on the site for excavation purposes, that no ore had been processed to date, and that active mining would begin "soon." During the two site visits, the County officials did not see any mined ore, garnet, stock piles, or tailings from the alleged recent operations. Also, a letter dated February 23, 1994, to Plaintiff's parent company from the contractor that had been performing the testing and sampling of the garnet, indicated that the latest round of testing and sampling had begun in December 1993 and was continuing at the time the letter was written—over a week after the three-year period of temporary cessation expired.

30. Based on the foregoing, there was ample evidence for the Board to conclude that any extraction activity that had occurred was on a small scale and was for purposes of testing and sampling only, and that during the three-year period Plaintiff's activity was limited to exploration and other attempts to determine the extent, quality, and commercial potential of its garnet deposits. It was thus reasonable for the Board to conclude that the extraction activity that had occurred was sporadic and intermittent at best, and was not sufficient to prevent the expiration of the allowable period of temporary cessation under the 1991 ordinance.

### III. ISSUES NOT ADDRESSED

31. As part of the Code Map 30 argument concerning the 1980 ordinance, Plaintiff raises an issue concerning the alleged invalidity of the 1991 and 1993 ordinances. Plaintiff maintains that the County did not give proper notice to the necessary parties prior to adopting these ordinances.

This issue was not raised during the administrative proceedings and was not addressed by the Board. It was raised only in passing during the district court proceedings, in one paragraph of a brief similar to the brief filed in this appeal. It is apparent that the facts underlying this issue were never litigated, such as the type of notice, if any, that was provided prior to adoption of the ordinances. Similarly, the legal issue of the type of notice, if any, that was required by statute or ordinance was not litigated below. We therefore hold that the issue was not properly preserved for our review. *See Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) (where argument was not presented to lower court, and appellant did not fairly invoke ruling on that argument below, argument will not be considered on appeal).

32. Plaintiff attacks the Board's finding that the contemplated garnet mining operation would be a new mine, subject to the permit requirement, because garnet had never before been mined for commercial purposes at Plaintiff's mine site. Plaintiff contends that the garnet ore contained the gold, silver, and copper that had previously been mined, so prior mining operations had unavoidably also mined garnet, even though no garnet had been marketed as a result. Given our holding that Plaintiff's mining operation is subject to the permit requirement for the reasons discussed above, we need not decide whether a change in the mineral that is being marketed, without a change in the mining location or technique, is a sufficient change to trigger the need to obtain a new permit.

33. Plaintiff also contends that the abandonment provisions of the 1993 ordinance should apply prospectively only, rather than retrospectively. As we noted above, for purposes of the temporary cessation discussion, we accepted the argument that the 1991 ordinance was the applicable ordinance and applied the temporary cessation provision found in that ordinance. We therefore do not address this contention.

## IV. DUE PROCESS

■ 34. Plaintiff maintains that the County violated its right to a fair and impartial hearing because the Board was predisposed to rule against it. *See Santa Fe Exploration,* 114 N.M. at 109, 835 P.2d at 825 (administrative trier of fact must be free from bias or prejudice regarding the outcome of a case). Like the district court, we are not persuaded by Plaintiff's arguments. The Board held at least two days of hearings, heard testimony from a number of witnesses, and allowed Plaintiff to submit multiple volumes of exhibits. There is no evidence to support Plaintiff's claim of predisposition—the only indication of record is that the Board simply did not believe Plaintiff's witnesses or accept Plaintiff's interpretation of the applicable ordinances. The Board chose instead to rely on the observations of the County's staff, on its own observations, on the documentary evidence, and on its own view of the meaning and effect of its own ordinances. We therefore hold that Plaintiff has not proved that it was denied the fair and impartial hearing to which it was entitled.

## CONCLUSION

35. Based on the foregoing, we hold that the County's permit requirement was not completely preempted by the Act and the regulations adopted pursuant to that Act. We also hold that the County's decision to require Plaintiff to obtain a permit for its mining operations was not arbitrary and capricious, contrary to law, or lacking evidentiary support in the administrative record. We therefore affirm the district court's decision in this matter.

36. **IT IS SO ORDERED.**

APODACA, C.J., and BUSTAMANTE, J., concur.