303 F.3d 1195
 RANCHO LOBO, LTD, a Texas limited partnership, Plaintiff-Counter-Defendant-Appellee,
v.
Antonio DEVARGAS, Patricio Antonio Garcia, Gilbert Chavez, Moises Morales, Alfredo Montoya, and Nelson Cordova, in their individual and official capacities; the Board of County Commissioners of the County of Rio Arriba, Defendants-Counter-Claimants-Appellants.
 No. 01-2196.
 United States Court of Appeals, Tenth Circuit.
 August 20, 2002.
 
 COPYRIGHT MATERIAL OMITTED Simeon Herskovits (Grove Burnett with him on the briefs), Western Environmental Law Center, Taos, New Mexico, for the defendants-counter-claimants-appellants.
 John R. Polk (Clara Ann Bowler with him on the brief), Albuquerque, New Mexico, for the plaintiff-counter-defendant-appellee.
 Before EBEL, McKAY, and BRISCOE, Circuit Judges.
 BRISCOE, Circuit Judge.
 
 
 1
 Defendants, all members of the Board of Commissioners of the County of Rio Arriba, New Mexico (hereinafter "the County") appeal from a decision of the district court holding that the Rio Arriba County Timber Harvest Ordinance is invalid because it is preempted by the New Mexico Forest Conservation Act, N.M.S.A.1978 §§ 68-2-1 et seq., and also holding that the ordinance's provisions for requiring an environmental assessment are invalid because they delegate unlimited power to the county planning and zoning commission. The County contends that the Timber Harvest Ordinance is not preempted by the Act, but instead asserts there is room for concurrent jurisdiction. The County further contends that the Timber Harvest Ordinance's provisions for environmental assessment do not improperly delegate unlimited power to the Planning and Zoning Commission. We reverse and remand.
 
 I.
 
 2
 The facts in this case are undisputed. The New Mexico Forest Conservation Act establishes the State Forestry Division, which is authorized to enforce all laws, rules and regulations relating to all forested, cutover or brushlands within the state under the following circumstances:
 
 
 3
 A. prevention and suppression of fires;
 
 
 4
 B. logging and timber operations and practices;
 
 C. trespass, waste and littering; and
 
 5
 D. conservation of commercial forest lands and products.
 
 
 6
 N.M.S.A 1978, § 68-2-14. The Division is authorized to make and enforce rules and regulations "for the prevention and suppression of forest or brush fires, and for the control of forest pests and for the application of commercial forest practices within the state." Id., § 68-2-16. Section 68-2-16 also provides:
 
 
 7
 Nothing in the Forest Conservation Act [citation omitted] shall prevent a landowner hereafter from converting forest vegetative types to nonforest vegetative types for such purposes as range, wildlife habitat, farming, surface mining or subdivision development; provided, however, any slash resulting from such conversion shall be treated in a manner that will minimize the spread of forest fires and the possibility of insect epidemic.
 
 
 8
 Pursuant to its authority under the Forest Conservation Act, the Division has promulgated a series of regulations concerning tree harvesting and forest regeneration. 19 NMAC 20.2.[1] The objective of this series of regulations is to "require appropriate forest resource management in order to assist in the prevention and suppression of forest fires, the control of forest pests and to maintain and enhance the economic benefits of forests and forest resources to New Mexico." 19 NMAC 20.2.6. The regulations require a state harvest permit for the harvest of commercial forest species in an area of twenty-five acres or more, and require submission of the method of harvesting and the treatment of skid trails and slash, as well as a forest regeneration plan. 19 NMAC 20.2.8-20.2.10.
 
 
 9
 In response to a threat to its watershed caused by erosion from timber harvesting on private lands, the County in 1998 enacted the Timber Harvest Ordinance under its zoning authority and power to provide for the general welfare. The purpose of the ordinance is:
 
 
 10
 to protect, maintain and restore fully functional forests and streams, rivers, watersheds and acequias while permitting the harvest of forest goods; to protect against immediate and long range threats to the quality of the Rio Arriba County's water; to preserve local customs, culture and traditions; to preserve the bosques from harm and exploitation; to protect landowners and the property value of timberlands; to encourage the location of compatible uses of land; to promote sustainable logging practices; to encourage logging operations within Rio Arriba County; and to protect the health, safety and welfare of the citizens of Rio Arriba County.
 
 
 11
 Timber Harvest Ordinance, Article II.
 
 
 12
 The Timber Harvest Ordinance requires those who wish to harvest timber to obtain a county permit in most instances. If a permit is required, the applicant must present a timber harvest plan detailing the action, including a plan to control erosion. Id., Article VI(B)(4). In evaluating a plan, the county planning and zoning department considers: 1) the sustainability of timber production; 2) economic development and local employment; 3) water quality and availability; 4) soil protection; 5) logging roads and hauling; 6) harvest selection, techniques, old growth management and reforestation; 7) archeological, historic and cultural resources; 8) abatement of noise, dust, smoke and traffic; 9) hours of operation; 10) compatibility with adjacent land uses; and 11) the effect of existing harvests on the application. Id., Article VI(C). In some cases where the planning and zoning department finds that the proposed harvest would create a significant environmental impact, the applicant may be required to prepare an environmental assessment. Id., Article VI(H), (I).
 
 
 13
 The Timber Harvest Ordinance requires compliance with measures that are recommended but left voluntary under the state scheme. Erosion control plans, logging roads, drainage systems, buffer zones to protect riparian areas, and regeneration plans must comply with the best management practices recommended in the New Mexico Guidelines. Id., Article VI(B), (C).
 
 
 14
 In 1991, plaintiff Rancho Lobo acquired property in Rio Arriba County for the purpose of establishing a hunting preserve. In February of 2000, Rancho Lobo applied for and was granted a permit by the Forestry Division to harvest trees in order to "[r]elease understory trees," "[i]mprove residual tree health and growth," "[e]nhance wildlife habitat and utilization in the areas," "[p]romote the Englemann spruce as a stand component and/or aspen regeneration," and "[p]repare future prescribed burn areas by removing white fir and mistletoed Douglas fir from ponderosa pine/Douglas fir stand types and enhance their establishment." Aplt.App. at 85.
 
 
 15
 In March 2000, the County informed Rancho Lobo that it needed to apply for a county timber harvest permit under the Timber Harvest Ordinance. Rancho Lobo refused to seek a permit, and instead filed an action arguing that the ordinance was invalid because it conflicted with and was preempted by the Forest Conservation Act, that enforcement of the ordinance constituted a taking in violation of the Fifth and Fourteenth Amendments, and that the ordinance illegally deprived Rancho Lobo of its property.
 
 
 16
 Both parties filed motions for summary judgment on the issue of the validity of the ordinance. In its motion, Rancho Lobo alleged that the Timber Harvest Ordinance was invalid because it was preempted by the Forest Conservation Act and was not a proper use of the County's zoning authority. In ruling on the cross-motions, the district court first determined there was sufficient controlling New Mexico law for it to decide the validity of the ordinance without certifying the question to the New Mexico Supreme Court. The district court held that the Timber Harvest Ordinance conflicted with the Forest Conservation Act because the Act allows clear-cutting while the ordinance prohibits clear-cutting without a variance being obtained. The district court also held that the ordinance conflicted with the Forest Conservation Act because the ordinance required a more extensive and stricter permitting process.
 
 
 17
 On the issue of preemption, the district court found that the statutory language of the Forest Conservation Act providing that the Forestry Division is authorized to make and enforce rules and regulations, and enforce all laws, rules and regulations relating to forestry, logging and timber operations indicated an express preemption of the Timber Harvest Ordinance. The district court further found that although the ordinance was a valid exercise of zoning authority, its provision for requiring an environmental assessment was not a valid exercise of authority because it gave the county planning and zoning department "unlimited power" to determine who would be required to prepare an environmental assessment. Ultimately, the district court held that the entire Timber Harvest Ordinance was expressly preempted by the Forest Conservation Act, and was therefore invalid. As a result, the district court granted partial summary judgment in favor of Rancho Lobo. The district court certified the partial summary judgment as a final judgment pursuant to Fed.R.Civ.P. 54(b).
 
 II.
 
 18
 The County contends that the district court erred in determining that the New Mexico Forest Conservation Act preempted the County Timber Harvest Ordinance. The County argues there is no preemption, either express or implied, and that the ordinance does not conflict with the Forest Conservation Act, thus leaving room for concurrent regulation.
 
 
 19
 We have jurisdiction over Rancho Lobo's preemption claim because of the diversity of the parties. A federal court sitting in diversity applies the substantive law of the forum state. Commerce Bank, N.A. v. Chrysler Realty Corp., 244 F.3d 777, 780 (10th Cir.2001). We review the district court's determination of state law de novo. Id.
 
 
 New Mexico law on preemption
 
 
 20
 Counties in New Mexico are granted almost the same powers as municipalities. See N.M.S.A.1978, § 4-37-1 (same powers "except for those powers that are inconsistent with statutory or constitutional limitations placed on counties"). The powers granted to counties include the power to enact zoning ordinances and those ordinances that are "necessary and proper to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of any county or its inhabitants." Id. See Board of Comm'rs of Rio Arriba County v. Greacen, 129 N.M. 177, 3 P.3d 672, 677 (2000). Where a county ordinance conflicts with a state statute, the state statute controls. See Greacen, 3 P.3d at 677-78. However, there is no invasion of state statutory authority where the local ordinance "`merely complements the statute and is nowhere antagonistic therewith.'" Id. at 678 (quoting State ex rel. Coffin v. McCall, 58 N.M. 534, 273 P.2d 642, 644 (1954)).
 
 
 21
 With regard to the preemption of local ordinances by state law, the New Mexico Supreme Court has held that, generally, in order to limit the power of local government, some express statement of the power denied must be contained in the state law. See Apodaca v. Wilson, 86 N.M. 516, 525 P.2d 876, 881 (1974). However, "any New Mexico law that clearly intends to preempt a governmental area should be sufficient without necessarily stating that affected municipalities must comply and cannot operate to the contrary." Casuse v. City of Gallup, 106 N.M. 571, 746 P.2d 1103, 1105 (1987). In San Pedro Mining Corp. v. Board of County Comm'rs, 121 N.M. 194, 909 P.2d 754 (App.1995), the court summarized New Mexico state/local preemption law as follows:
 
 
 22
 A local governmental body's ability to regulate in an area may be preempted either expressly, by the language of a statute, or impliedly, due to a conflict between the local body's ordinances and the contents, purposes, or pervasive scheme of the statute.... A local government is presumed to retain the power to exercise its normal authority over an activity, so the intention of the legislature to preempt local control must be clearly stated if express preemption is to result....
 
 
 23
 . . . .
 
 
 24
 Even in the absence of express preemption by the legislature, a county ordinance may be preempted if it conflicts with a state statute or regulation, or if the statute demonstrates an intent to occupy the entire field.
 
 
 25
 Id. at 758-59.
 
 
 26
 Therefore, under New Mexico law, there are three ways a state statute can preempt a local ordinance: 1) expressly, because the statute contains language stating that it preempts local ordinances, see Apodaca, 525 P.2d at 881; 2) impliedly, because the ordinance and the state statute conflict, see Greacen, 3 P.3d at 677-78; or 3) impliedly, because the statute demonstrates an intent to occupy the entire field, see Casuse, 746 P.2d at 1105.
 
 
 Express preemption
 
 
 27
 The district court concluded that the Forest Conservation Act "expressly" preempted local governments from regulating the timber harvest. However, under New Mexico law, this characterization is incorrect. In order to expressly preempt a local ordinance, the legislature must clearly state its intention to do so. See San Pedro Mining, 909 P.2d at 758. There is no such clear statement of intent in the Forest Conservation Act.
 
 
 28
 The district court's conclusion that the Forest Conservation Act expressly preempted the ordinance was based on language in the Act giving the Forestry Division the power to "make and enforce rules and regulations not in conflict with any law now in force as it deems necessary for the ... application of commercial forest practices within the state," N.M.S.A. 1978, § 68-2-16, to "enforce all laws, rules and regulations relating to all forested, cutover or brush lands lying within the state under the following circumstances... logging and timber operations and practices ... conservation of commercial forest lands and products," id., § 68-2-14, and to "enforce and administer all laws and regulations relating to forestry on lands within the state," id. § 9-5A-4(C). The district court concluded that "[t]he statutory language clearly indicates the legislature's intent to expressly preempt local governmental entities from regulating timber harvests." Order at 7.
 
 
 29
 However, while the above-cited language authorizes the Forestry Division to enforce and administer all laws and regulations relating to timber harvesting, it does not give the Division exclusive power to do so, nor does it expressly prohibit local governments from enacting and enforcing laws relating to timber harvesting. Therefore, the Forest Conservation Act does not set forth in a clear and unambiguous manner the legislature's intent to expressly preempt local regulation.
 
 
 30
 In San Pedro Mining, the court addressed a preemption situation similar to the one at issue here.[2] The question was whether a county's mining ordinance was preempted by the New Mexico Mining Act. The plaintiff in that case claimed express preemption, pointing to language in the New Mexico Mining Act stating that "[a]fter the effective date of the New Mexico Mining Act and until the commission adopts regulations necessary to carry out the provisions of the New Mexico Mining Act, county mining laws or ordinances shall apply to mining within their jurisdictions in New Mexico." 909 P.2d at 759. The plaintiff argued this provision of the New Mexico Mining Act meant that after the commission had adopted regulations necessary to carry out the Act, the local ordinances were preempted. However, the court disagreed, stating:
 
 
 31
 It is certainly possible to read this Section as Plaintiff does, to mean that once the referenced regulations are adopted, no county regulation or ordinance shall apply to mining activity, whether or not the ordinance conflicts with the state regulations or the statute. It is also possible, however, that the legislature included this provision only to ensure that local ordinances governing the same matters as the statute would not be immediately rendered ineffective by the mere passage of the statute, which would have left those matters uncontrolled pending the commission's adoption of the regulations required by the statute. Given the absence of an explicit prohibition of any type of local regulation of mining after the adoption of the regulations, and given the fact that the Act and its regulations are not comprehensive in scope but govern only certain aspects of mining, we believe the Act is ambiguous concerning its effect on local mining ordinances.
 
 
 32
 
 Id.
 
 
 
 33
 In San Pedro Mining, the court cited the New Mexico Pesticide Control Act, specifically N.M.S.A.1978 § 76-4-9.1, as a statute which contained language creating an express preemption. That statute unambiguously precludes local control over pesticides by stating: "Except as otherwise authorized in the Pesticide Control Act, no city, county or other political subdivision of the state and no home rule municipality shall adopt or continue in effect any ordinance, rule, regulation or statute regarding the registration, labeling, distribution, sale, handling, use, application, transportation or disposal of pesticides." N.M.S.A.1978 § 76-4-9.1. The court concluded the New Mexico Mining Act did not expressly preempt the county mining ordinance in question.
 
 
 34
 As with the mining act at issue in San Pedro Mining, the Forest Conservation Act does not contain language which unambiguously reflects an intent to expressly preempt local legislation regarding timber harvests. We therefore hold that the district court erred in concluding that the Forest Conservation Act expressly preempted the ordinance in question.
 
 
 35
 Our determination with regard to express preemption does not end our inquiry, however, because Rancho Lobo also argued the theory of implied preemption, even though the district court did not address that theory. New Mexico law recognizes that a statute may be impliedly preempted even though the requirements for express preemption are not met. See San Pedro Mining, 909 P.2d at 758-59. We therefore address the question of implied preemption. See Chandler v. City of Arvada, 292 F.3d 1236, 1242 (10th Cir. 2002) (holding that this court is free to affirm a district court's decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court).
 
 
 36
 
 Implied preemption by occupying area of law
 
 
 
 37
 We cannot rely on our conclusion that the Forest Conservation Act did not expressly preempt the Timber Harvest Ordinance to also conclude that the Act did not impliedly preempt the ordinance. Under New Mexico law, preemption may be implied if it is evident from the language of the New Mexico law at issue that the legislature "clearly intended to preempt a governmental area." Casuse, 746 P.2d at 1105; see San Pedro Mining, 909 P.2d at 759. Therefore, we next examine the Forest Conservation Act and determine whether the New Mexico legislature intended to preempt the entire area of regulation regarding timber harvesting, or whether it left room for local regulation.
 
 
 38
 There is some support for the conclusion that the Forest Conservation Act occupies the entire area of forestry regulation. The Act contains provisions granting the Forestry Division sweeping powers to make rules and regulations regarding timber harvests, and to enforce "all" rules and regulations regarding logging, timber and forestry. Further, the rules and regulations promulgated by the Forestry Division are fairly comprehensive with regard to the circumstances under which logging will be allowed, in that they require a state harvest permit for the harvest of commercial forest species in an area of twenty-five acres or more, and the permitting process requires submission of the method of harvesting and proposed treatment of skid trails and slash, as well as a forest regeneration plan. See 19 NMAC 20.2.8-20.2.10.
 
 
 39
 However, this was also the case with the New Mexico Mining Act at issue in San Pedro Mining. In examining the New Mexico Mining Act, the court in San Pedro Mining first determined that the primary focus of the Act was to minimize the damage to the land being mined, and that the Act and regulations promulgated under it required specific closeout plans, including plans for reclamation that had to be submitted before a state permit could be obtained. The court also found that the Act required mining activity to be conducted in such a way as to minimize erosion and to ensure that toxic waste did not leave the permit area. Further, the regulations under the Act were very specific about requirements for the diversion of streams, impounding of water, and the construction of roads. In concluding that implied preemption was not established, however, the court stated:
 
 
 40
 Significantly, neither the Act nor the regulations contain any mention of development issues with which local governments are traditionally concerned, such as traffic congestion, increased noise, possible nuisances created by blasting or fugitive dues, compatibility of the mining use with the use made of surrounding lands, appropriate distribution of land use and development, and the effect of the mining activity on surrounding property values.... The County's ordinance does, in part, address many of these concerns.... Therefore, there is room for concurrent jurisdiction and regulation, with the County's ordinance regulating aspects of the mining activity that concern off-site safety, compatibility with surrounding property uses, and other matters left unaddressed by the Act and regulations. Plaintiff can accordingly be required to obtain County as well as State approval for its mining activities.
 
 
 41
 909 P.2d at 759-60.
 
 
 42
 The relationship between the New Mexico Mining Act and the county ordinance at issue in San Pedro Mining is very similar to the relationship between the Forest Conservation Act and the Timber Harvest Ordinance at issue here. The Forest Conservation Act's primary focus is the minimization of damage to the permitted land, and the regulations promulgated under the Act reflect that. However, like the New Mexico Mining Act, the Forest Conservation Act does not really address the kinds of development issues "with which local governments are traditionally concerned." See 909 P.2d at 759. While some of the regulations pertain to the protection of permitted property, the main focus of the Timber Harvest Ordinance is on local issues, such as the amelioration of damage to the surrounding property as the result of timber harvesting, including issues such as the effect of the timber harvest on economic development and local employment, water quality and availability, soil protection, archeological, historic and cultural resources, abatement of noise, dust, smoke and traffic, hours of operation, compatibility with adjacent land uses, cumulative effect when combined with existing harvests.
 
 
 43
 From our review of New Mexico law, especially San Pedro Mining, we conclude that, in passing the Forest Conservation Act the legislature left room for concurrent jurisdiction over local forestry issues, and that the Forest Conservation Act does not impliedly preempt the Timber Harvest Ordinance by occupying the entire field of regulation relating to timber harvesting in New Mexico.
 
 
 Implied preemption because of conflict
 
 
 44
 Even in the absence of express preemption or implied preemption from intent to occupy the field, an ordinance may still be impliedly preempted where it conflicts with the state statute. See Greacen, 3 P.3d at 677-78; San Pedro Mining, 909 P.2d at 759. The district court found that the Timber Harvest Ordinance conflicted with the Forest Conservation Act in two instances: 1) the ordinance has stricter requirements than the Act for obtaining a permit; and 2) the Act allows clear-cutting while the ordinance prohibits it unless a variance is obtained.
 
 
 45
 The district court erred when it concluded that the ordinance and Act were in conflict because the ordinance has stricter requirements for obtaining a permit. Under New Mexico law, an ordinance is not necessarily invalid because it provides for greater restrictions than state law; rather, the test is whether the ordinance permits an act the general law prohibits, or prohibits an act the general law permits. Incorporated County of Los Alamos v. Montoya, 108 N.M. 361, 772 P.2d 891, 895 (App.1989). The mere fact that a company is required to obtain local as well as state approval for its activities does not result in a conflict between the two regulatory schemes. See San Pedro Mining, 909 P.2d at 760.
 
 
 46
 The district court also concluded that a conflict existed between the Forest Conservation Act and the Timber Harvest Ordinance with regard to clear-cutting. The ordinance bans clear-cutting without a variance. Timber Harvest Ordinance, Article VI(C)(3). However, the Forest Conservation Act expressly states that nothing in its act "shall prevent a landowner hereafter from converting forest vegetative types to nonforest vegetative types for such purposes as range, wildlife, habitat, farming, surface mining or subdivision development." N.M.S.A.1978, § 68-2-16. The district court held these provisions to be conflicting, stating: "In other words, the State Act allows clear cutting while the County Ordinance prohibits clear cutting if a variance is not obtained." Order at 5. We disagree. Section 68-2-16 does not state that landowners "shall have the right to clear-cut" or that clear-cutting "is permitted." Similarly, the statute does not state that municipal governments are prohibited from imposing their own restrictions on clear-cutting. Instead, the language of the statute simply makes clear that nothing in the Forest Conservation Act itself is to be interpreted as a ban on clear-cutting activity under the specifically stated circumstances. As a result, the Forest Conservation Act does not establish an affirmative right to clear-cut, and does not conflict with the Timber Harvest Ordinance's ban on clear-cutting without a variance. The district court erred in determining the Forest Conservation Act preempts the Timber Harvest Ordinance.
 
 III.
 
 47
 We now turn to the County's contention that the district court erred in finding that the provisions of the Timber Harvest Ordinance concerning the requirement of an environmental assessment are invalid because they give the county planning and zoning department unlimited power to decide who will be required to prepare an environmental assessment. The County contends that language stating that an assessment is necessary upon a finding that the proposed harvest would have a "significant effect on watercourses or acequia systems, county or private property, other natural or historic resources, or the public health, safety or welfare" is sufficient guidance to restrict the Department's discretion.
 
 
 48
 The Timber Harvest Ordinance provisions in question provide that:
 
 
 49
 An applicant may be required to prepare an Environmental Assessment (EA) for a proposed harvest when the Planning and Zoning Department, upon review of the THP application, finds that the proposed harvest would cause a significant environmental impact. The department's findings shall be in writing and fully state the nature and significance of the environmental impact and the legal and factual basis for the finding.
 
 
 50
 Timber Harvest Ordinance, Article VI(I) (emphasis added.) The ordinance further defines a significant environmental impact as "a significant effect on watercourses or acequia systems, county or private property, other natural or historic resources, or the public health, safety and welfare." Id., Article VI(H.2). Similarly, another portion of the ordinance provides that, where the proposed harvest is part of a combined harvest plan:
 
 
 51
 The Planning and Zoning Department may order an applicant to prepare an Environmental Assessment pursuant to this ordinance upon a finding that the proposed and existing harvests, when assessed together, would have significant effects on the environment, public and private property and infrastructure, and the public health safety and welfare.
 
 
 52
 Id., Article VI(C)(11) (emphasis added.) The district court found that these provisions were invalid because use of the word "may" granted the planning and zoning department the "unlimited power to decide which persons will be ordered to prepare an Environmental Assessment."
 
 
 53
 It is true that, under New Mexico law, a legislative body "may not vest unbridled or arbitrary power in an administrative agency but must furnish a reasonably accurate standard to guide it." City of Santa Fe v. Gamble-Skogmo, Inc., 73 N.M. 410, 389 P.2d 13, 18 (1964). However, such standards "need not be specific" and broad, general standards are permissible as long as they are capable of a reasonable application and are sufficient to limit and define the agencies' discretionary powers. Id.
 
 
 54
 In this case, the authority of the planning and zoning department to order an environmental assessment is limited by the requirement that such an assessment will be required only in cases where there is a significant environmental impact or where the "proposed and existing harvests, when assessed together, would have significant effects on the environment, public and private property and infrastructure, and the public health safety and welfare." While this may be a broad standard, it is not an impermissible one. The New Mexico Supreme Court has upheld a law with an equally broad standard. See Parker v. Bd. of County Comm'rs, 93 N.M. 641, 603 P.2d 1098, 1099-1100 (1979). In Parker, the court upheld a zoning regulation providing that the board of county commissioners "may" suspend or revoke approval of a plat if the applicant did not submit "sufficient information." The court noted that what constituted "sufficient information" was left to the board, but held that it was a valid broad general standard. Id. at 1100.
 
 
 55
 Similarly, the Timber Harvest Ordinance at issue in this case contains a valid general standard for the exercise of discretion. Contrary to the holding of the district court, the ordinance does not vest the planning and zoning board with the "unlimited power to decide which persons will be ordered to prepare an Environmental Assessment." Order at 8. Rather, the board may order an environmental assessment only when it finds that the planned timber harvest will have a "significant environmental impact" or where the "proposed and existing harvests, when assessed together, would have significant effects on the environment, public and private property and infrastructure, and the public health, safety and welfare." Timber Harvest Ordinance, Article VI(C)(11). This power is capable of review and is not arbitrary.
 
 
 56
 Rancho Lobo argues that complying with an order to prepare an environmental statement is expensive and burdensome. This argument has no bearing on whether the provision requiring an environmental assessment is a valid delegation of legislative authority. The district court erred when it concluded the Timber Harvest Ordinance provision that requires preparation of an environmental assessment was not properly promulgated under the county's zoning authority.
 
 
 57
 We REVERSE the district court's conclusion that the Timber Harvest Ordinance is preempted by the Forest Conservation Act. We also REVERSE the district court's conclusion that the ordinance's provision for requiring an environmental assessment constituted an invalid delegation of legislative authority. We REMAND for further proceedings. Appellee's motion to certify question of state law is DENIED.
 
 
 
 Notes:
 
 
 [1]
 Since the district court's decision, the New Mexico Administrative Code has been revised. For clarity, the prior citation style will be used
 
 
 [2]
 When sitting in diversity jurisdiction, a federal court must apply the law of the forum state as announced by that state's highest courtSee Cooper v. Cent. Southwest Servs., 271 F.3d 1247, 1251 (10th Cir.2001). Absent a definitive ruling from a state's highest court, "we must predict the course that body would take if confronted with the issue." Vanover v. Cook, 260 F.3d 1182, 1186 (10th Cir.2001) (internal quotation omitted). Consequently, because San Pedro Mining is a decision from the New Mexico Court of Appeals, an intermediate court in that state, it cannot be considered a controlling decision from New Mexico's highest court, the New Mexico Supreme Court. We recently explained, however, that "`[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that it is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" Webco Indus., Inc. v. Thermatool Corp., 278 F.3d 1120, 1132 (10th Cir.2002) (quoting Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988)). Based on our reading of decisions from the New Mexico Supreme Court, we do not believe that court would reach a different outcome than that reached in San Pedro Mining. Consequently, we follow the analysis in San Pedro Mining.