This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**CARLOS SEDILLO,**

Petitioner-Petitioner,

v.                                                    **No. A-1-CA-35658**

**NEW MEXICO RACING COMMISSION,**

Respondent-Respondent.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela-Shepherd, District Judge**

Santiago E. Juarez
Albuquerque, NM

for Petitioner

Hector H. Balderas, Attorney General
Santa Fe, NM
Audrey K. McKee, Assistant Attorney General
Albuquerque, NM

for Respondent

## MEMORANDUM OPINION

**VARGAS, Judge.**

{1}      Petitioner Carlos Sedillo, appeals the district court's order affirming the New Mexico Racing Commission's (the Commission) decision to suspend him from training horses, fine him, and order the surrender of purses after two horses he trained tested positive for a prohibited Class 1 drug. Sedillo argues that the Commission erred when it relied on drug test results from a lab that had not been approved by the Commission to find that he violated the rules governing horse trainers. Sedillo further contends that his due process rights were violated on several grounds. Finally, Sedillo claims that, in the event he did violate the rules, the penalty imposed by the Commission was improper. Concluding that Sedillo failed to show that the Commission's decision was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, or otherwise not in accordance with the law, we affirm.

**BACKGROUND**

{2}      Sedillo was the trainer of record for two horses that ran at the Ruidoso Downs on May 25, 2012. Following each horse's race, blood and urine samples were taken from them. The urine samples of both horses tested positive for Dermorphin,[1] a Class 1 drug. The board of stewards appointed to supervise the races held a hearing on the matter on September 30, 2012, and ruled that Sedillo had violated 15.2.6.9(C)(1)

---

[1]The Dermorphin concentration for one sample was 76.8 nanograms per milliliter, while the other was 48.3 nanograms per milliliter. It is unimportant to our analysis on appeal which sample belonged to which horse.

NMAC, 15.2.6.11(A) NMAC, and 16.47.1.10(B)(1) NMAC. *See* NMSA 1978, § 60-1A-12 (2007) (setting out the powers and duties of stewards); 15.2.3.8 NMAC (authorizing stewards to supervise licenses and persons responsible for the conduct of racing to insure compliance with the New Mexico Horse Racing Act (the Act), NMSA 1978, §§ 60-1A-1 to -30 (2007, as amended through 2018), and its regulations, including authority to discipline violators in accordance with the regulations). Sedillo appealed the board of stewards' ruling to the Commission. The Commission appointed a hearing officer, who, following a hearing, issued a report recommending a five-year suspension of Sedillo's trainer license, a five thousand dollar fine, and a loss of purse for each horse that tested positive for Dermorphin. The hearing officer made several findings, including:

> 5. Iowa State Racing Chemistry Lab ("ISU") . . . was . . . a Commission approved laboratory.
>
> . . . .
>
> 9. In May and June 2012, ISU did not have the capabilities to test or detect Dermorphin.
>
> . . . .
>
> 13. [University of California, Davis (UC Davis)] is capable of testing for and detecting Dermorphin.
>
> . . . .

16.     Testimony was presented and evidence introduced by the Commission that all primary samples of blood and urine taken from the Sedillo Horses (collectively the "Primary Samples") were sent to UC Davis. [Sedillo] presented no conflicting testimony.

{3}     The Commission unanimously adopted the hearing officer's report, including her findings of fact, conclusions of law, and recommended penalty. Pursuant to Rule 1-075 NMRA, Sedillo petitioned the district court to review the Commission's decision. The district court granted the petition and affirmed the Commission's decision. Sedillo then sought review by this Court, filing a petition for writ of certiorari, which we granted. *See* Rule 1-075 NMRA.

**DISCUSSION[2]**

{4}     Sedillo makes several assertions of error that can be summarized into three issues. First Sedillo asserts that the decision of the Commission's director to send the samples to a laboratory at UC Davis rather than one at Iowa State University, was error. Sedillo also argues that his due process rights were violated by the introduction of hearsay and documentary evidence, the failure to follow procedures, the failure to give him notice of prohibited substances, the failure to establish a chain of custody for

---

[2]Sedillo makes numerous factual assertions throughout his brief without providing any citations to the record. The citations that Sedillo does make to the record are often inaccurate or fail to offer any support to his assertions. Throughout this opinion, we address only those arguments that satisfy our appellate rules, though many do so only by the narrowest of margins. *See* Rule 12-318 NMRA (requiring briefing to provide citations to relevant authorities as well as to the record proper).

4

the samples, and the deprivation of his right of cross-examination. Lastly, Sedillo argues that the penalty assessed against him was contrary to the Commission's rules and regulations.

{5}     In reviewing the Commission's decision, "[w]e apply the same administrative standard of review as the district court sitting in its appellate capacity." *Rayellen Res., Inc. v. N.M. Cultural Prop. Review Comm.*, 2014-NMSC-006, ¶ 15, 319 P.3d 639. Specifically, we consider whether the Commission's decision was "arbitrary, capricious, or an abuse of discretion; not supported by substantial evidence in the record; or, otherwise not in accordance with law." *Id.* (internal quotation marks and citation omitted); *see* Rule 1-075(R).

**Agency Director's Authority to Designate Laboratory**

{6}     Section 60-1A-14(A) of the Act requires the Commission to adopt rules governing the handling and post-race testing of blood and urine samples. The statute further requires that specimens taken from horses be divided into two samples designated as the "official sample" and the "split sample," with the official sample "tested by the commission or its designated laboratory[.]" Section 60-1A-14(B). In accordance with its mandate, the Commission promulgated 15.2.6.10 NMAC, establishing rules and guidelines for sample collection, storage, shipment, and testing, including the requirement that "[a] primary testing laboratory must be accredited by

[the association of racing commissioners international] and approved by the [C]ommission." 15.2.6.10(B)(2) NMAC.

**{7}** On appeal, Sedillo asserts that the UC Davis laboratory was not "approved by the [C]ommission" as required by 15.2.6.10(B)(2) NMAC and, instead, was chosen by Vince Mares (Mares), its executive director. Mares, Sedillo argues, did not possess the authority of the Commission to approve the laboratory; and, the Commission's failure to comply with the regulatory requirements for approval of testing laboratories precludes it from revoking his license and imposing penalties on the basis of those test results.

**{8}** Sedillo's interpretation of the statute and accompanying regulations is too narrow. *See Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 14, 147 N.M. 678, 228 P.3d 462 (acknowledging the rule that courts interpreting the New Mexico Administrative Code apply the same rules as used in statutory interpretation); *see also Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350 ("We are to read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole."). The Act requires the Commission to adopt rules "to implement the . . . Act and to ensure that horse racing in New Mexico is conducted with fairness and that the participants and patrons are protected against illegal practices" on the racing grounds. Section 60-1A-5(A). Among the

6

various rules promulgated as a result of this mandate was 15.2.1.8 NMAC, setting forth the Commission's purpose, powers, responsibilities, and general authority, including the authority to "delegate to the [Commission's] director . . . all powers and duties necessary to fully implement the purposes of the Act." 15.2.1.8(B)(2) NMAC.

{9}       At Sedillo's administrative hearing, the hearing officer issued a finding, which Sedillo does not contest, that the Iowa State University laboratory was not capable of testing for or detecting Dermorphin—the drug discovered through the UC Davis tests. The Commission concluded that the duties and authority bestowed upon Mares as the Commission's director, authorized him to designate an alternate laboratory to test for drugs that could not be detected by Iowa State University, the laboratory approved by the Commission, in order "to protect the integrity of horse racing, to ensure the health and welfare of race horses and to safeguard the interests of the public and the participants in racing." Under the circumstances, Mares's decision to have the samples tested by another lab, one capable of detecting more prohibited substances, was necessary to ensure those involved with the May 25, 2012 races were protected against illegal practices. *See* 15.2.1.8(B)(2) NMAC. As Sedillo did not address the Commission's authority to delegate duties such as the approval of testing laboratories to its director, we conclude that Sedillo has failed to demonstrate that the Commission's decision on this matter "was arbitrary, capricious, or an abuse of

discretion; not supported by substantial evidence in the record; or otherwise not in accordance with law." *Rayellen Res., Inc.*, 2014-NMSC-006, ¶ 15 (internal quotation marks and citation omitted).

**Due Process**

{10}     We turn now to Sedillo's due process arguments, beginning with his assertion that the Commission's decision is not supported by the evidence because the test results on which the Commission relied were in the form of hearsay and documentary evidence. Sedillo also argues that he was deprived of his right to "cross-examine the only evidence introduced against him, namely the test results." Presumably, this argument is meant to illustrate the shortcomings of the introduction of hearsay and documentary evidence. Sedillo's arguments, however, ignore the Commission's rules, which explicitly allow for the presentation and admission of both hearsay and documentary evidence. *See* 15.2.1.9(B)(6)(b) NMAC and 15.2.1.9(C)(12)(b) NMAC. Indeed, 15.2.1.9(B)(6)(b) NMAC and 15.2.1.9(C)(12)(b) NMAC allow for the admissibility of hearsay and documentary evidence if it is "of a type that is commonly relied on by reasonably prudent people." 15.2.1.9(B)(6)(b). He fails to demonstrate why those results are not commonly relied on by a reasonably prudent person. *See* 15.2.1.9(C)(12)(b) NMAC.

{11} Furthermore, while Sedillo is correct that the rules governing the Commission proceedings provide for and require parties to have an opportunity to cross-examine each witness, *see* 15.2.1.9(C)(10)(f) NMAC, he does not point with any particularity to any witness he was unable to question or any line of inquiry that he was unable to pursue. Instead, the record suggests he was given, and indeed availed himself of, the opportunity to cross-examine witnesses, including Dr. Scott Stanley, the chief chemist at the UC Davis testing laboratory who testified about the contents of UC Davis' drug test results, as well as the scientific soundness of the procedures employed by UC Davis. In light of Sedillo's failure to develop his argument, we need not address it further. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to review an "undeveloped argument" where the brief relied on several facts but did not cite to the record to support the appellant's assertions).

{12} Sedillo next argues that the procedures used to handle the samples were contrary to the procedures required by the Act and its accompanying regulations. Sedillo's assertions regarding improper procedure center around the manner in which the split samples were handled.[3] Though he argues that the test results are suspect for

---

[3]Despite insisting the split samples were improperly handled, Sedillo also asserts that the test results for the split samples did not detect any prohibited substances, though he does so without any citation to the record. He appears to seek an inference that these samples prove he is innocent of committing the violation at issue in this case. However, even if we were to assume this fact is true, it carries little persuasive value because the Iowa State University lab that tested these samples was

9

several reasons related to the handling and storage of the split samples, Sedillo fails to direct us to the portion of the record that supports his argument. *See* Rule 12-318(A); *In re Estate of Heeter*, 1992-NMCA-032, ¶ 15, 113 N.M. 691, 831 P.2d 990 (stating that we will not search the record to find evidence to support a party's claim). Further, it is unimportant for our purposes on appeal whether some irregularity existed regarding the split samples, as the results from the official sample tested by UC Davis, were prima facie evidence that a prohibited drug was administered to the horses and was present in the horses' bodies while they participated in their respective races. 15.2.6.9(C)(1) NMAC (4/30/2012); *see also* 15.2.6.9(C)(3) NMAC (4/30/2012) ("[A] person may not administer or cause to be administered by any means to a horse a prohibited drug . . . during the 24-hour period before post time for the race in which the horse is entered."). The procedural compliance regarding the split samples is collateral to and cannot serve as a basis for the reversal of the commission's decision. *Cf. Claridge v. N.M. Racing Comm'n*, 1988-NMCA-056, ¶¶ 37-38, 107 N.M. 632, 763 P.2d 66 (concluding that the challenge alleging a violation concerning a collateral matter not directly at issue before the Commission did not provide sufficient justification for overturning an administrative agency's decision).

---

apparently unable to test for Dermorphin, the presence of which is the basis for the violations in this case. Sedillo was sanctioned on the basis of the positive test results obtained by UC Davis.

**{13}** Sedillo also argues that his due process rights were violated because he was not given notice that certain substances were prohibited and that the Commission failed to demonstrate a chain of custody for the split sample in compliance with its rules. Sedillo's briefing on both of these issues relies on facts without citing to the record to support his assertions. We again note that Sedillo's argument regarding chain of custody focuses primarily on split samples and, is therefore collateral to the issues raised in this case, as it was the original sample that was the basis for the penalties assessed against him. *Cf. id.* (discussing collateral matter in administrative agency case). Additionally, while he claims that no list of prohibited substances was posted in the test barn or the racing secretary's office as required by 15.2.6.9(A) NMAC (4/30/2012), he provides no citations to the record and instead points to a document in the record that he filed with the Commission that simply restates, verbatim, the assertion he makes in his brief. We will not search the record for evidence to support Sedillo's claim and decline to review such an undeveloped argument. *See In re Estate of Heeter*, 1992-NMCA-032, ¶ 15; *Headley*, 2005-NMCA-045, ¶ 15; *see also Santa Fe Expl. Co. v. Oil Conservation Comm'n*, 1992-NMSC-044, ¶ 11, 114 N.M. 103, 835 P.2d 819 (cautioning counsel to review and follow appellate rules where brief contained "numerous factual statements without a single citation to the record below," save for record citation pointing to quoted material from a filing made below).

**Penalty**

{14}     Finally, we turn to Sedillo's argument regarding the penalty imposed against him. Regulation 15.2.6.9 NMAC, which sets forth the classification level of various substances as well as penalty recommendations for violations of the rules governing those substances, has undergone various amendments. The most important for our purposes here are the amendments of April 2012 and July 2012. The April 2012 version of 15.2.6.9 NMAC, contained a recommended penalty for a Class 1 drug violation of a one to five years' suspension, at least a $5,000 fine, and loss of purse. 15.2.6.9(B)(1) NMAC (4/30/2012). In July 2012 the Commission reduced the recommended penalty for a trainer's first offense to a one- to three-year suspension and a fine of $10,000 or loss of purse. 15.2.6.9(C)(1)(a) NMAC (7/31/2012).

{15}     Sedillo insists that NMSA 1978, Section 12-2A-16(C) (1997) of the Uniform Statute and Rule Construction Act, prohibits the Commission from imposing the April 2012 recommended penalty. Sedillo relies on Section 12-2A-16(C), which provides, "[i]f a *criminal penalty* for a violation of a statute or rule is reduced by an amendment, the penalty, if not already imposed, must be imposed under the statute or rule as amended." (Emphasis added.) He argues that application of the April 2012 recommended penalty is improper because the penalty itself was imposed after the lower penalty recommendation was adopted. Sedillo's reliance on Section 12-2A-

12

16(C) is misplaced, as the violation before the Commission was not a criminal matter. Instead, Section 12-2A-16(A) controls. That section states, "[a]n amendment or repeal of a *civil statute* or rule does not affect a pending action or proceeding or a right accrued before the amendment or repeal takes effect." (Emphasis added.) Section 12-2A-16(A) reflects our Constitution's protection against interference with evidentiary and procedural matters in cases that are in the process or course of litigation but that have not been concluded or determined by a final judgment. N.M. Const. art. IV, § 34 ("No act of the [L]egislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case."). The races in question occurred in May 2012, and the board of stewards' decision was issued in September 2012. To apply different regulations on the date of their issuance in July 2012 to a matter that had been pending for months would be contrary to both Section 12-2A-16(A) and our Constitution.

**{16}** Finally, Sedillo claims that the Commission's imposition of consecutive, rather than concurrent, sanctions is contrary to its own rules and regulations and "finds no authority in the statutory makeup of the agency." Notwithstanding that the penalties assessed against Sedillo are civil in nature, he erroneously relies on criminal law concepts regarding the rehabilitative qualities of sentences in making his argument. The Act authorizes the Commission to "suspend, revoke or deny renewal of a

13

license[,]" as well as impose civil penalties for a licensee's violation of the Act or its accompanying rules. Section 60-1A-5(C), (D); 15.2.1.9(C)(20) NMAC. The rules authorize the Commission to assess an administrative penalty for violations of the Act and its accompanying rules; and, each occurrence that amounts to a violation "may be considered a separate violation." 15.2.1.9(C)(20)(b) NMAC. The penalties assessed against Sedillo are in accordance with the penalty recommendations for a violation involving a Class 1 drug.[4] 15.2.6.9(B)(1) NMAC (4/30/2012). We therefore conclude that the penalty assessed against Sedillo in this case was not outside the Commission's authority under NMAC 15.2.1.9, was not arbitrary or capricious, and was not contrary to the law.

**CONCLUSION**

{**17**}     We affirm.

{**18**}     **IT IS SO ORDERED.**

_____

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

---

[4]Nowhere in the record or briefing before us does Sedillo assert Dermorphin does not qualify as a Class 1 drug.

14

**HENRY M. BOHNHOFF, Judge**